[No. 3,357.]

ADELAIDE PEARSON v. LAURA PEARSON, THEODORE PEARSON, MINOR; HENRY PEARSON, MINOR; MARY PEARSON, MINOR; WILLIAM PEARSON, MINOR; RICHARD PEARSON, MINOR; JEFFERSON PEARSON, MINOR; AND H. H. WORLEY, GUARDIAN OF SAID MINORS.

INHERITANCE BY PRETERMITTED CHILD. — If a testator leaves no wife, nor any issue, except a child, for whom he failed to provide in his will, without showing that this failure was intentional, the pretermitted child will take the whole estate in the same manner as though the testator had died intestate.

IDEM. — In such case the pretermitted child will take by descent, and not by purchase.

WHEN HEIR MAY MAINTAIN EJECTMENT. — If there is no surviving wife, or issue of a testator, except a child for whom no provision was made in the will, without showing that it was intentional such pretermitted child

CAL. REPS. XLVI—77

may maintain ejectment, for the realty of which the testator died seized, if there is no pending administration of the estate.

EJECTMENT BY PRETERMITTED CHILD. — If there is a surviving wife and children of the deceased who are devisees in the will, and the testator makes no provision in the will for a child, the pretermitted child may maintain ejectment for his proportion of the realty of which the testator died seized, if there is no pending administration.

TITLE HELD BY PRETERMITTED HEIR, IN TESTATOR'S ESTATE. — If the testator fails to make provision for a child in his will without showing that it was intentional, the pretermitted child will take the same share in the estate, and hold by the same title, as though the testator had died intestate; and if the testator leaves a surviving wife and other children, who are devisees, the pretermitted child takes the title by descent, and becomes a tenant in common with the devisees

PUTTING A PAPER IN EVIDENCE. — If the plaintiff's counsel, at the close of the testimony, states that he desires to have an original will, a copy of which is in the answer, go with the paper in evidence, in order that the Court may inspect it, and defendant's counsel assents to it, saying he, too, wants it to go in evidence, this is putting the will in evidence for every purpose for which it is legitimate.

DECLARATIONS IN A WILL AS EVIDENCE. — Declarations made by the testator in his will are competent evidence, after his death, tending to prove his marriage and the legitimacy of his children, in a case where the persons so declared his wife and children are the devisees.

IDEM. — Such declarations being competent evidence, and admitted without objection, in the absence of contradictory evidence, prove such marriage and legitimacy, and are not to be disregarded because the wife and witnesses of the marriage are living, who might have been called.

ORDER OF DISTRIBUTION OF ESTATE. — An order of a Probate Court distributing an estate is void unless the order to show cause why a decree of distribution should not be made, is published at least four successive weeks, or personally served on all persons interested in the estate, or all persons so interested shall signify, in writing, their assent to the distribution.

WHEN DECREE OF DISTRIBUTION IS VOID. — Where, in proceedings for the distribution of an estate, jurisdiction of the person is acquired by publication of notice, and the order for publication is made May eighth, and it directs persons interested to appear June fourth and show cause, and the facts appear on the face of the decree, the decree is void as to the persons interested in the estate who do not appear, and may be attacked in a collateral action.

JURISDICTION OF PERSON. — When the record recites the mode adopted to acquire jurisdiction over the person, in a probate proceeding, it will not be presumed something different was done.

APPEARANCE IN PROBATE COURT. — In a proceeding in Probate Court for the distribution of an estate, if there are minor heirs named in the will, and

a minor heir not named in the will, and an attorney is appointed to represent the minor heirs named in the will, and the decree of distribution recites that he appeared for the minor heirs, but on the settlement of the executor's account he appears for the minor heirs named in the will only, the recital in the decree of distribution will be construed as an appearance for the minor heirs named in the will only.

APPEAL from the District Court, Tenth Judicial District, Colusa County.

Pearson, the testator, died on the 10th day of January, 1865, having made his will a week before his death. The decree of distribution was made on the 4th day of June, 1866. The plaintiff was born on the 10th day of October, 1850, and was a minor when the probate proceedings were had. This action was commenced before June, 1871, and was tried in September, 1871.

The other facts are stated in the opinion.

*Curry & Evans*, and *John T. Harrington*, for Appellants.

The pleadings, evidence, and the admitted facts established that the will was duly made, admitted to probate, and recorded; that the executor named in the will was duly appointed and commissioned by said Probate Court, and executed a proper bond, and entered upon the discharge of his duties as such executor.

The Probate Court acquired jurisdiction of and concerning said will and the estate of Pearson, deceased, and its jurisdiction was complete and exclusive. (Constitution, Art. VI, Laws of 1863, p. 333, 1 Hittell, 1232, 1245, 1273.) The Probate Court is a Court of record. (Constitution, Art. 6, Sec. 9, 1 Hittell, 1229.) Its jurisdiction is exclusive. (*Adams* v. *De Cook*, 1 McAllister R. 253; *People* v. *McGlynn*, 20 Cal. 264–275; *Bowen's Case*, 34 Cal. 689; *Castro* v. *Richardson*, 18 Cal. 479.) Its judgments are "final and conclusive, and not subject, except on appeal to a higher Court, to be questioned in any other Court." (20 Cal. 268.)

They cannot be attacked collaterally.    (*Becket* v. *Selover*, 7
Cal. 215; *Irwin* v. *Scriber*, 18 Cal. 524; *Lucas* v. *Todd*, 28
Cal. 186, 187; *Boyd* v. *Blankman*, 29 Cal. 42, 43; *Thomson*
v. *Tolmie*, 2 Peters, 168; *Tompkins* v. *Tompkins*, 1 Story R.
557; Laws 1865–6, p. 767; Laws 1861, p. 628, 2 Hittell,
5956.)

The questions passed upon and determined by the District
Court were exclusively within the jurisdiction of the Pro-
bate Court.    (See cases above cited, and *Chapman* v. *Hollis-
ter*, 42 Cal. 463.)    The will being executed, probated, and
recorded, it follows that the estate devised vested, upon the
death of said Richard Pearson, in his devisees.    (1 Jarman
on Wills, 212, 213, and cases there cited; Act concerning
Wills, Sec. 21, 2 Hittell's Dig. 7346; *Matter of Estate of
Garraud*, 35 Cal. 339.)

The plaintiff's right, if she had any, was by force of the
Statute of Wills, Secs. 16, 17; and to be administered and
assigned in the Probate Court (Statute of Wills, Sec. 18);
and the Probate Court was competent to determine any
question as to her right.    If an issue of fact, as to plaintiff's
right in the premises, had been joined, that Court had
authority to try it (*Keller* v. *Franklin*, 5 Cal. 432); and if,
upon such trial, it had been found that she was entitled, as
an heir at law of deceased, not named in his will, to a share
of the estate, the Probate Court could then have assigned it
to her, as provided by Chapter XI of the Probate Act.
The District Court is not competent to make distribution in
an action of ejectment, or any other action.

For the reasons above given, we maintain that the Dis-
trict Court had no jurisdiction to hear and determine,
judicially, the primary facts necessary to be found and de-
termined, in order to establish any right in the plaintiff to
the property in controversy.

The evidence in the cause required and demanded a find-
ing, decision, and judgment in favor of defendants, and

- therefore the District Court erred in deciding and giving judgment in favor of plaintiff against defendants. The defendants became invested with the title to the premises in controversy, by and under the will of Richard Pearson, deceased. (1 Jarman on Wills, 212, 213, and notes; Act concerning Wills, Sec. 21; *Matter of Estate of Woodworth,* 31 Cal. 604.) The most the plaintiff could be entitled to, as a child of Richard Pearson, not named in his will, would be one seventh of two thirds of the property. (Statute of Descents and Distributions, Sec. 1, 1 Hittell's Dig. 2329.)

The evidence in the case showed that the defendant Laura was the wife of Richard Pearson at the time of his death, and that the infant defendants were his children. The recital or statement in the will, made by Pearson, deceased, that Laura Pearson was his wife, and that said several infant defendants were his children, is competent and sufficient evidence of the facts so stated. (1 Greenleaf's Ev. Sec. 23; *Denn* v. *Cornell,* 3 John. Cas. 174; *Garwood* v. *Dennis,* 4 Binn. 314; *Carver* v. *Jackson,* 4 Peters, 1, 82, 83; *Stow* v. *Wyse,* 7 Conn. 214; *Bowman* v. *Taylor,* 2 Ad. & El. 278.)

" The correspondence of deceased members of the family; recitals in family deeds, such as marriage settlements; descriptions in wills and other solemn acts, are original evidence in all cases where the oral declarations of the parties are admissible." (1 Greenleaf's Ev. Sec. 104; 1 Phillip's Ev. 367; *Doe ex dem. Johnson* v. *Earl of Pembroke,* 11 East. 504; *Elliott* v. *Piersol,* 1 Peters, 337; *Slaney* v. *Wade,* 1 Myl. and Cr. 338; *Goodright ex dem. Stevens* v. *Moss,* 2 Cowper, 591; *Caujolle* v. *Ferrie,* 26 Barb. 178, 187; 23 N. Y. 91, 94, 107.)

In addition to the testator's declarations, the fact that the defendants bore and still bear his name, is evidence of the truth of such declarations. (4 Kent, 502; 1 Stark Ev., Part I, Sec. 12.) Declarations in such cases, made by one privy

in estate and blood, *ante litem motam*, are competent evidence. (1 Greenleaf's Ev., Secs. 131, 132; *Gleadow* v. *Atkin*, 1 Cromp. and Mees. 423, 424; *Caujolle* v. *Ferrie*, 23 N. Y. 94, 97, 104; s. c., 26 Barb. 187.) And the acknowledgment of the parties—the father or the mother—are admissible to prove a marriage, even against third persons not claiming under them. (*Fenton* v. *Reed*, 4 John. 52, 54; *Allen* v. *Hall*, 2 Nott and McCord, 114–118.) *A fortiori*, when the claim is under the declarant. (*Johnson* v. *Johnson*, 1 Dessau Eq. R. 595; 1 Cow. and Hill's Notes, 3d ed., 232; *Wilkinson* v. *Adams*, 1 Vesey and Beam, 462; *Caujolle* v. *Ferrie*, 23 N. Y. 107.)

The presumption is that the infant defendants were the legitimate children of the testator. (*Starr* v. *Peck*, 1 Hill, 272; *Clayton* v. *Wardell*, 4 N. Y. 236; Matthew's Presumptive Ev. 26–28: 1 Greenleaf's Ev., Secs. 34, 35.) The case of *Blackburn* v. *Crawfords*, 3 Wallace, 175, does not maintain the broad proposition declared by the Judge in this case. In that case the origin of the cohabitation was illicit and meretricious. *Clayton* v. *Wardell*, 4 N. Y. 236; *Cunningham* v. *Cunningham*, 2 Dow. P. C. 482; *Caujolle* v. *Ferrie*, 23 N. Y. 95.)

The title to the lands devised being vested by the will in the defendants, the plaintiff, as a child of the testator, not named in the will, could only obtain a portion of such estate by showing she was a child of the testator, and that she had not been provided for otherwise. (Stat. of Wills, Sec. 19.) If no provision had been made for her, the burden was on her to show it, as a condition to disturbing or revoking the will *pro tanto*. (*Williams* v. *The East India Co.*, 3 East, 192.)

Though a child be not mentioned in the will, nor provided for otherwise, the will is not to be deemed invalid and void for that reason. The share to which she may be entitled must be made up as provided by section eighteen of the Statute of Wills, and assigned as provided by law. (Pro-

bate Act, Chap. XI, 2 Hittell's Dig. 5945; *Mitchell* v. *Blain*,
5 Paige, 589, 590; *Branton* v. *Branton*, 23 Ark. R., 570;
*Lorieux* v. *Keller*, 5 Iowa, 196; *Bancroft* v. *Ives*, 3 Gray, 371.)

The Missouri cases relied on by plaintiff's counsel are
upon a statute in some essential particulars unlike our stat-
ute. (*Bradley* v. *Bradley*, 24 Missouri, 312; *Hargadine* v.
*Pulte*, 27 id., 423.)

If the District Court can, in any case, have jurisdiction in
the premises, the mode and manner of determining the plain-
tiff's right must be as provided by the statute. The estate
was distributed, and, from that time, at least, the defend-
ants were completely invested with the title to the lands in
controversy, and therefore were entitled to the possession.
(*Estate of Garraud*, 36 Cal. 277; *Hahn* v. *Kelly*, 34 Cal.
402; Probate Act, Secs. 157–161, 260; *Stuart* v. *Allen*, 16 Cal.
503, 504.) If the decree of distribution was void, as held
by the District Court, then the estate is still in the hands of
the executor, who is entitled to its possession, and he alone
can maintain ejectment for it. (*Chapman* v. *Hollister*, 42
Cal. 463, and cases there cited; *Matter of Estate of Wood-
worth*, 31 Cal. 604, and cases there cited.)

The statement of the fact in the will of Richard Pearson,
that Laura was his wife, and the infant defendants were his
children, is evidence of the fact so stated, and binds privies
in blood and privies in estate. Between such parties the
matter stated or recited needs not at any time to be other-
wise proved. This is the rule stated in 1 Greenleaf's Ev.,
Sec. 23, and in all the books treating of the subject. (*Denn*
v. *Cornell*, 3 John. Cas. 174; *Penrose* v. *Griffith*, 4 Binney,
231; 1 Greenleaf on Ev., Sec. 104; *Doe ex dem. Johnson* v.
*The Earl of Pembroke*, 11 East. 104.)

The pretense on the part of the plaintiff that Richard
Pearson's declarations in his will were hearsay evidence, or
circumstantial evidence proper, is without foundation in fact
or law. They were original evidence in character as

much so as if Pearson's testimony of the facts declared had been given as a witness on the stand. (1 Greenleaf's Ev., Sec. 104; *Monkton* v. *Attorney General,* 2 Russ. and Mylne, 147.) In *Goodright* v. *Moss,* 2 Cow. 591, Lord MANSFIELD held that the declarations of parents respecting the legitimacy of children, made in their lifetime, were admissible in evidence after their death. And in *Monkton's Case,* the Court said that "whatever applies to the evidence of a witness spoken in the box applies to written declarations, provided they are brought home to the person supposed to have made them."

The declarations of Richard Pearson are found written in his will, and the words of the will are proved to be his words, and thus what he so said is brought home to him as his written declarations. The probate establishes the words proved as the legal will of the deceased. (2 Red. on Wills, 52.)

*Van Clief & McCann,* for Respondent.

The District Court had jurisdiction, as it is a "case at law involving the title and possession of real property." (Art. VI, Sec. 6, of Constitution.)

The admitted jurisdiction of the Probate Court to distribute and partition estates of deceased persons, testate and intestate, and as a necessary incident thereto to try questions of title to real estate, cannot oust the District Court of its constitutional jurisdiction. So far as this incidental jurisdiction of the Probate Court exists it is concurrent with that of the District Courts. No authoritative construction of the Constitution warrants the assumption that the respective jurisdictions of the District, Probate, and County Courts are entirely exclusive of each other; although they are so as to the principal subjects matter of the jurisdiction of each. Were it as assumed by counsel for appellant, we might well contend that Probate Courts have no jurisdiction to try or

determine questions of title to real estate under any circumstances, for the reason that such jurisdiction is, by the Constitution, expressly conferred upon the District Courts, whilst it can be claimed for the Probate Court only by implication—the Constitution providing only that County Judges shall hold "Probate Courts, and perform such duties, as Probate Judges, as may be prescribed by law."

The probate of the will did not determine what property or what title the devisees named in it should take. It only adjudged that the testator was of the class of persons allowed by law to make a will; that the will was executed according to the forms of law; and that the instrument contained the words used by the testator to express his last will. What the testator meant by those words, and how far his meaning may be carried into effect without contravening the rules or the policy of the law, are undoubtedly questions of construction, to be decided by any Court in which the will may be offered as evidence of title. (2 Redf. on Wills, 53; 1 id. 382, 384; *Brenham* v. *Story*, 39 Cal. 185.)

The seventeenth section of our statute concerning wills restricts the testamentary power to a mode, which must be regarded as the measure of the power, and which forbids testators to disinherit any of their children, except in the mode prescribed. They must express their intention to omit any one of their children, otherwise the omitted child "shall have the same share in the estate of the testator as if he had died intestate, to be assigned as provided in the preceding section;" that is, "as provided by law, in case of intestate estates." The first section of the same statute declares that all such estate as is not disposed of by will, "shall descend as the estate of an intestate." The effect of these provisions of our statute must be, that the omitted child takes by descent, and not by purchase; and that the

title vests in such child upon the instant of the death of the testator, uninterrupted by the will. (*Estate of Donahue*, 36 Cal. 330.) This, however, is denied by the learned counsel for appellant, who contend that the title passes first to the devisees named in the will, and remains in them until divested by a judgment of the Probate Court distributing the estate, and assigning the share to the omitted child. Their principal ground for this construction, as we understand them, is, that the seventeenth section requires the share of the omitted child "to be assigned as provided in the preceding section," viz: as "in case of intestate estates." Perhaps this argument might have some force if it had not been determined that "in cases of intestate estates," the title of the heir, in no degree, depends upon an assignment or distribution by the Probate Court; but, on the contrary, that the heir takes the title on the instant of the death of the intestate, and may convey it before any proceedings in the Probate Court. (*Brenham* v. *Story*, 39 Cal. 188; *Chapman* v. *Hollister*, 42 Cal. 463.) Again, if the omitted child does not take by descent, nor under the will, by which of the modes known to the law does such child finally acquire the title? Certainly not by escheat, occupancy, prescription, forfeiture, or execution; yet our authors have discovered no other modes. (*Wiseman* v. *McNulty*, 25 Cal. 241.)

The adjudged cases in other States arising on similar statutes sustain our construction. In *Wilson's Exrs.* v. *Fosket*, 6 Met. 405, it was held that the omitted child took by descent and "not under the will." In *Bancroft* v. *Ives*, 3 Gray, 371, it was held that the omitted child had the title after the probate of the will and before it had possession or had taken any proceedings to obtain possession.

Is it not, therefore, true that, as to such share, the testator is deemed to die intestate? *Branton* v. *Branton*, 23 Ark. 569; *Matter of Gerrard's Estate*, 35 Cal. 338; *Pena* v. *Peck*, 31 Cal. 361; *Matter of the Estate of Utz*, 43 Cal. 200;

*Walters* v. *Cullen,* 2 Bradford; *Mitchel* v. *Blain,* 5 Paige, 588; *Malcolm* v. *Malcolm,* 3 Cush. 477; *McCartee* v. *O. A. Society,* 9 Cowen, 437; *Hall's Heirs* v. *Hall's Exrs.,* 38 Ala. 131.)

The will set forth in the answer as a devise of the land in controversy; and the stipulation, by virtue of which alone it was in evidence, described it as an instrument in writing, "purporting to be his last will and testament." It was not offered in evidence for the distinct purpose of proving marriage or legitimacy, nor for any purpose, except that of proving a devise of the demanded premises.

The expressions, "Laura, my wife," and "Theodore, my son," answered no purpose of the alleged devise, except to designate or describe the objects of the testator's bounty. For this purpose, we admit they were in evidence; but there was no question on this score. It was not denied that these defendants were the identical persons intended by the testator; therefore, for all purposes of the alleged devise, these descriptive expressions performed their office, and effected their object, whether they were true descriptions or not. If they were admissible to prove marriage or legitimacy, they were so only as declarations of a deceased person, and by virtue of an exception to the general rule prohibiting hearsay evidence, allowed in cases of pedigree, etc. But allowing the declarations in the will, in relation to the marriage and legitimacy, were properly in evidence, they were insufficient to prove the alleged marriage and legitimacy; and so the Court below found.

We do not understand how, upon any principle of the law of evidence, such declarations are at all admissible, except upon two grounds, neither of which existed in this case:

First—As declarations of deceased members of a family, as to matters of pedigree, not susceptible of more direct or satisfactory proof.

Second—As verbal acts—being part of the *res gestæ.*

Of the first, Mr. Phillips, in treating of the exceptions to the rule excluding hearsay, says: "Hearsay statements of deceased persons are allowed to be received in matters of pedigree, subject, however, to various qualifications. This exception appears to be founded on the considerations that the facts which are subject of inquiry are frequently of an ancient date, and that the knowledge of them is usually confined to few individuals. By limiting the exception to the statements of deceased persons, a resort to this kind of evidence is precluded, where the hearsay tendered indicates the existence of more satisfactory proof, and it is only admitted on failure of the ordinary channels of information." (1 Phillips' Ev. 248, 4 Am. ed.)

But in the following paragraph the author admits that the practice has not been in strict accord with these principles, and that such hearsay statements are sometimes admitted to prove facts that recently transpired, in the presence of living witnesses. But in most of these instances it will be found that the statements were really admitted on the second ground, viz: that they amount to verbal acts—being connected with some act which they serve to qualify or explain; as where a boy, whose parentage is in question, has been brought up and educated in a family, not only the manner in which he was treated, but what members of the family said of him, and his relation to them, may be proved. So, when a man and woman are shown to have cohabited, and treated each other as husband and wife, what they said to and of each other, and especially of the relation between them during the time of such cohabitation, may be proved to qualify or explain their conduct. In these cases the statements proved are not hearsay, but original evidence. (1 Phillips' Ev. 185, 4 Am. ed.; 1 Greenl. Ev., Secs. 106, 108.)

But the declarations of Richard Pearson are not admissible on the first ground above stated, because the marriage

and births to be proved by them were of recent date, and susceptible of proof by living witnesses, who were in Court at the time of the trial; nor on the second ground, because no cohabitation or other act was proven which could have been qualified or explained by those declarations.    It did not appear that Richard Pearson ever saw the defendant Laura, or the infant defendants, much less that he ever lived with them, or treated them in any manner whatever.    (*In the Matter of Taylor*, 9 Paige, 613; *Williams* v. *East India Company*, 3 East, 192; 1 Phillips' Ev. 573, 574, 4 Am. ed.)

The legitimacy of children involves a lawful marriage, to prove which is the first step in the investigation; so that the infant defendants as well as the defendant Laura are bound to prove the marriage in order to make out their heirship; and in addition to this the infants must show that they were born of the marriage.

Richard Pearson said not a word about a marriage—not a word about the birth of children.    When and where did the marriage take place ?    Was it one day, one year, or twenty years before the date of the will?    When, where, and of what mother were they born ?    In what case was the issue of legitimacy ever proved, for the purpose of making title to property, without showing who was the mother of the alleged heir ?    In this case the answer alleges, and the infant defendants are bound to prove, that the defendant Laura is their mother; yet, so far as the expression "my son" tends to prove legitimacy, it applies as well to some other woman.

There is no proof that Richard Pearson ever saw defendant Laura, much less that he ever cohabited with her, nor that she ever admitted herself to be his wife at any time before the commencement of this action; no evidence that any human being ever heard, or had the least reason to suspect, that the marriage relation ever existed between them. Why did not Laura or some one of the defendants come forward and testify to the marriage, or cohabitation, or some

other slight circumstance tending to prove a marriage? Laura must have known the fact of marriage, if any there was; and some of the infant defendants must have known many of the circumstances usually adduced to prove a marriage. But even if all such circumstantial evidence had been adduced, it must have been regarded with suspicion so long as the alleged wife, present in the Court-room, declined to take the stand and testify to the fact itself. (1 Phillips' Ev. 573, 574, 4 Am. ed. and Note 166; id. 251 and Note 91.)

All this applies with equal force to the evidence of the heirship of the infant defendants. Besides, if the marriage is not proved as alleged, the claim of the infants must fail, for the reason that they are limited to their allegation that they were born of that marriage.

As to the mode and sufficiency of the proof of marriage, we cite the following authorities: *People* v. *Anderson*, 26 Cal. 130; *Clayton* v. *Wardell*, 4 N. Y. 230; *Kuhl* v. *Knauer*, 7 B. Monroe, 130; *The Matter of Taylor*, 9 Paige, 611; *Martin's Heirs* v. *Martin*, 22 Ala. 102; *Forney* v. *Hallacker*, 8 Serg. and R. 153; *Caujolle* v. *Ferrie*, 23 N. Y. 91, and 26 Barb. 178.


By the Court, CROCKETT, J.:

In the year 1865 one Richard Pearson died in the County of Colusa, seized of certain real estate situate in that county, and leaving a last will and testament, which was duly admitted to probate, whereby he devised to the defendant Laura Pearson, who is styled in the will the wife of the testator, and to Theodore, Henry, Mary, William, Richard, and Jefferson Pearson, who are described in the will as children of the testator, and to Susan Price, equal portions of his real estate. The plaintiff is a daughter of Pearson by a former wife, from whom he was divorced; and the action is ejectment to recover from the defendants the possession of all the real estate of which her father died seized. The plaintiff was

not mentioned or in any manner referred to in the will of her father : and she claims that, under section seventeen of the Statute of Wills, she inherited from him as though he had died intestate. In the Court below judgment was entered in favor of the plaintiff for all the real estate of which her father died seized ; and the defendants appeal from the judgment and from the order denying their motion for a new trial.

At the trial certain facts were agreed to "for the purposes. of the trial of this action," and embodied in a written stipulation, signed by counsel. The answer contained a literal copy of the will ; and amongst other facts, it was admitted by the stipulation that Pearson made, executed, and published an instrument in writing, signed and sealed by him, "purporting to be his last will and testament, in the presence of witnesses, as set forth in defendant's answer to said amended complaint." The stipulation then sets forth certain proceedings of the Probate Court, touching the admission of the will to probate, the settlement of the final account of the executor, and the distribution of the estate, which it is admitted is a correct statement of those proceedings. It was also admitted that the plaintiff is a daughter of Pearson by his former wife, from whom he was divorced ; and that the defendants are in possession of the land, holding the same as devisees under the will, and under the decree of distribution. There was no proof that the defendant, Laura Pearson, was the wife, or the other defendants the children of Richard Pearson, except such as is furnished by the facts admitted by the stipulation, or by the original will, which the defendants claim was put in evidence.

The Court below held : First, that there was no proof, or not sufficient proof, that the defendant Laura was the wife, or the minor defendants the legitimate children of Richard Pearson, deceased ; and that as to the plaintiff, he must be held to have died intestate ; that being his only heir at law,

she is entitled to the whole estate; second, that the decree of distribution is void on its face, and does not estop the plaintiff.

The defendants contend that these rulings are erroneous; and further, that the District Court is not the proper forum, or ejectment the form of action in which the plaintiff can assert her rights, if she has any.

If the last point be well taken it is decisive of this appeal, and will therefore be first considered. That the District Court has jurisdiction of an action of ejectment every one will concede; but whether the plaintiff can maintain that form of action is the point raised by the defendants. In discussing this point it becomes material to inquire by what tenure the plaintiff holds, and what status she occupies towards the real estate of her deceased father. Section seventeen of the Statute of Wills provides that if a testator shall omit in his will to provide for any of his children, unless it shall appear that the omission was intentional, the omitted child "shall have the same share in the estate of the testator as if he or she had died intestate, to be assigned as provided in the preceding section." The next preceding section provides that if a child be born to the testator after the making of his will, and no provision shall be made therein for such child, it shall have the same share in the estate as if the testator had died intestate, unless it shall be apparent from the will that it was the intention of the testator that no provision should be made for such child; "and the share of such child shall be assigned as provided by law, in case of intestate estates." The share of a pretermitted child is therefore to be "assigned as provided by law, in case of intestate estates."

If the testator leave no wife surviving him, nor any issue except the pretermitted child, it is clear the child would take the whole estate in the same manner as though the testator had died intestate. The estate would, of course, be

subject to the payment of debts; and, if there were no other statutory provisions, the rights of the child would be, in all respects, precisely the same as though the testator had died intestate.    There can be no doubt that, in such a case, the child would take by descent, and not by purchase.    But section eighteen provides that the share of the omitted child " shall be first taken from the estate not disposed of by will, if any; if that shall not be sufficient, so much as shall be necessary shall be taken from the devisees or legatees in proportion to the value they may respectively receive under the will, unless the obvious intention of the testator in relation to some specific devise or bequest, or other provision in the will, would thereby be defeated; in such case, such specific devise, legacy, or provision may be exempted from such apportionment, and a different apportionment consistent with the intention of the. testator may be adopted."    These provisions can have no application to a case in which the testator left no surviving wife, nor any issue except the pretermitted child; in which event the child would take the whole estate, and there would be no need for any apportionment.    The same remark applies to section nineteen, which provides that if the omitted child shall have had an equal proportion of the testator's estate bestowed on it in the lifetime of the testator by way of advancement, it shall take nothing under these provisions.    If the omitted child is entitled to the whole, the question of advancement becomes, of course, immaterial.    I am, therefore, of opinion that if there was no surviving wife, or other issue of the testator than the plaintiff, she might maintain ejectment if there be no pending administration of the estate.

But it is argued that, even though there be a surviving wife, and other lawful issue than the omitted child, the latter will nevertheless take by descent, as though the tes-

tator had died intestate, and will become a tenant in common with the wife and other children; in which event, ejectment would lie to recover the share of the omitted child in the real estate, if there be no administration.    In support of this view, it is claimed that the provisions in sections eighteen and nineteen only regulate the method of distribution, and do not touch the question of the *title* acquired by the omitted child.    On the other hand, it is urged that the *title* of all the estate devised passes by the will to the devisees, and that the omitted child has no interest whatever therein, if there be an amount of the estate not devised equivalent to the share of such child, or if its share was advanced by the testator in his lifetime.    But if no advancements were made, and if there be no estate not devised, still, it is claimed, the *title* passes to the devisees by the will, and that the rights of the omitted child can be worked out only through proceedings in the Probate Court for distribution; or if there be no administration, then through the medium of a Court of equity.    Under section seventeen, the omitted child is to " have the same share in the estate of the testator as if he or she had died intestate," to be assigned " as provided by law in case of intestate estates."

The next inquiry is: What would have been the share of such child if the testator had died intestate, and how must it have been assigned ?    The Statute of Descents and Distributions answers the first branch of the inquiry.    " When any person having title to any estate, not otherwise limited by marriage contract, shall die intestate as to such estate, it shall *descend*, and be distributed, subject to the payment of his or her debts, in the following manner," and then proceeds to define the " shares " which the surviving husband, or wife, and the children, if there be any, are to take.    The estate descends, and the *title* vests in the heirs, by operation of law, subject to the payment of debts.    The reasonable inference from these provisions is, that the omitted child is

to take the same share of the estate, and to hold it by the same *title* as though the testator had died intestate; and it is to be assigned, "as provided by law in case of intestate estates." That is to say, it is to be distributed, after the payment of debts, to those entitled to it, by a decree or order of the Probate Court. But section eighteen provides that in a certain contingency the usual order of distribution is to be departed from. If a portion of the estate be not devised, so much of this as may be necessary shall be assigned to the omitted child, in lieu of its interest in the remainder of the estate; or if it has already received its full share by way of advancement, it shall receive nothing more. But all this relates merely to the basis of the distribution, and to the method adopted for assigning to the omitted child its share of the estate, but has no reference to the question of title, or the tenure by which the estate is held. I am, therefore, of opinion that the omitted child takes the title by descent, and becomes a tenant in common with the devisees. If it were otherwise, and if the title to the property went exclusively to the devisees, a conveyance by them to a purchaser in good faith, and for a valuable consideration, would exonerate the estate from the claim of the omitted heir, and remit him to his remedy against the devisees personally. This remedy would often be of no practical value; and the omitted heir would hold his estate by a frail tenure, if he had no greater security than the personal liability of the devisee. The following authorities tend to support the proposition that the omitted child takes the *title* by descent: *Wilson's Exrs.* v. *Fosket*, 6 Met. 405; *Bancroft* v. *Ives*, 3 Gray, 371; *Bradly* v. *Bradly*, 24 Mo. 312; *Hargardine* v. *Pulte*, 27 Mo. 423.

This brings us to the point, whether the Court below erred in holding that there was no sufficient proof that the defendant Laura was the wife, and the minor defendants the legitimate children of the testator. In considering this

point, we shall treat the original will as having been put in evidence. It appears from the statement on motion for a new trial that at the close of the testimony "plaintiff's counsel then said that they desired that the original will should go with the papers in evidence, that the Court might inspect the original manuscript, and observe the alterations and interlineations in different handwritings, to which the defendants' counsel assented, saying that they, too, wanted it to go in evidence." We think this must be regarded as putting the will in evidence for every purpose for which it was legitimate testimony. The recitals in the will constitute the only evidence offered tending to prove that the defendant Laura was the wife, and the minor defendants the legitimate children of the testator.

But if the recitals were competent evidence, *tending* to prove the fact, and if there was no rebutting evidence, it is insisted, nevertheless, that the evidence was insufficient to establish the marriage and the legitimacy of the children. The first point to be examined is whether the recitals in the will furnish *any* evidence which the Court could properly consider as tending to prove the controverted facts. That such evidence has been received in Courts of high authority admits of no doubt. The earliest case to which our attention has been called is *Goodright* v. *Moss*, 2 Cowper, 591, in which Lord MANSFIELD held that, on an issue as to the legitimacy of the plaintiff, the answer of his deceased mother to a bill in chancery, wherein she admitted he was born out of wedlock, was admissible in evidence. The decision was put upon the ground that if the mother had been living she would have been a competent witness to prove the fact; and that after her death her declarations were competent. He says: "An entry in a father's family Bible, an inscription on a tombstone, a pedigree hung up in the family mansion, are all good evidence. So the declarations of parents in their lifetime."

The answer was therefore admitted as a declaration by the mother touching the legitimacy of the son. In *Vowles* v. *Young*, 13 Ves., Jr., 141, Lord Chancellor ERSKINE held that the declaration of a husband, to the effect that his wife was illegitimate, was admissible in evidence. In *Whitelocke* v. *Baker*, in the same volume, p. 514, Lord ELDON says: "Declarations in the family, *descriptions in wills*, descriptions upon monuments, descriptions in Bibles and registry books, all are admitted upon the principle that they are the natural effusions of a party who must know the truth, and who speaks upon an occasion when his mind stands in an even position, without any temptation to exceed or fall short of the truth." The case of *Doe on demise of Johnson* v. *The Earl of Pembroke*, 11 East, 504, carries the doctrine, apparently, to an extreme length. In that case the question was whether one Wm. Johnson, through whom the plaintiff claimed, had an elder brother, Thomas, through whom the defendants claimed. On this point the defendants offered in evidence a paper, purporting to be the will of one Richard Johnson, signed by him, and properly attested, dated in 1738, but with the seal torn off. In this condition it was found shortly after the death of the person last seized, in a drawer in his house, where it was kept with several canceled bonds and a current lease of his farm. It appeared by other evidence that John Johnson's father was named Richard; and if he were the maker of the will which was found in the drawer of his grandson, the person last seized, then it did appear by the will of the grandfather that he had an elder brother named Thomas, who was also the elder brother of William, through whom the plaintiff claimed. Lord ELLENBOROUGH admitted the will in evidence on the ground that, being kept with other family papers, as something relating to the family, it might be considered as a recognition that there was a person in the family of the name of Thomas Johnson, an elder brother of William, through whom the

plaintiff claimed.   In *Slaney* v. *Wade*, 1 Mylne and Craig, 338, the question was whether one Robert Moreton was the legitimate son of Slaney Moreton and Elizabeth Moreton, his wife.   In deciding the case the Lord Chancellor said: "It is proved, therefore, that there was a Slaney Moreton and an Elizabeth, his wife, at Birmingham; that after the death of Slaney Moreton, Elizabeth Moreton, widow, speaks of her son Robert Moreton, there being no trace of any second marriage; in addition to which, Robert Jones Moreton, by his will, gives two thousand pounds, in trust, for Robert Moreton, of Bilston, the lunatic, describing him as his relation.   This, in the absence of evidence throwing any doubt upon the case, is conclusive of the fact that Robert, the lunatic, is the legitimate son of Slaney Moreton and Elizabeth, his wife."   The Court not only held that the declarations of the mother, and the will of the relative, were competent, but that in the absence of rebutting proofs or circumstances, they were sufficient evidence of legitimacy. The same rule appears to have been adopted in some American Courts of high authority.   In *Carjolle* v. *Ferrie*, 26 Barb. 177, the declarations of a mother as to the legitimacy of her son, were held to be admissible in evidence after her death, if they were made *ante litem motam.* The case was taken to the Court of Appeals, where this ruling was affirmed (23 N. Y. 91).   In *Fenton* v. *Reed*, 4 John. 52, the question was whether a marriage had been solemnized between the plaintiff and one Reed.   The Court say: "Proof of an actual marriage was not necessary.   Such strict proof is only required in prosecutions for bigamy, and in actions for criminal conversation.   A marriage may be proved in other cases from cohabitation, reputation, acknowledgment of the parties, reception in the family," etc.

But we have been referred to two cases, which, it is claimed, hold a contrary doctrine: *Clayton* v. *Wardell*, 4 N. Y. 230, and *Blackburn* v. *Crawford*, 3 Wall. 176.   In the

former case the question was as to the legitimacy of the
issue of a marriage, which was claimed to be void on the
ground that the wife had been previously married and that
the first marriage had not been dissolved or terminated by
the death of the husband or otherwise. There was no
direct proof of the first marriage, and it was attempted to
establish it by evidence of cohabitation, of acknowledgment
of a marriage, of reception by their relatives and friends,
and of common reputation. It was clearly proved that the
connection between the parties, at its commencement and
for a considerable time thereafter, was meretricious, and the
evidence tending to prove a subsequent marriage was con-
flicting and unsatisfactory. On these facts the Court held
that the presumption was quite as strong that the connec-
tion continued to be meretricious as that there was a subse-
quent marriage. "The most that can be said upon this
point is that there is a conflict of presumption, and in such
a case the rule is that that must yield which has the least
probability to support it" (p. 237). The decision turned
upon the point that the connection having been at its com-
mencement and for a considerable time thereafter meretri-
cious, the presumption was it so continued, unless the
contrary appeared; and the evidence in the case was insuf-
ficient to overcome the presumption.

*Blackburn* v. *Crawford* was a somewhat similar case. The
connection between the parties was conceded to have been,
at its commencement and for many years thereafter, mere-
tricious, and the question was whether a secret marriage
had subsequently taken place. The female testified posi-
tively to the marriage; but the priest by whom she claimed
it was celebrated, had no recollection of it, and there was
no evidence of it to be found in the church register. The
alleged husband, in his last will and testament, declared the
children to be illegitimate, and so stated to the attorney
who drew up the will. In support of the marriage, there

was the positive testimony of the alleged wife, the notorious cohabitation of the parties, the recognition of the children by both parents, and the fact that they were permitted to take the name of the father. On the other hand, the wife admitted the connection to have been for many years meretricious, and there was no record of the marriage, nor did the priest remember to have celebrated it. In addition to these facts, the alleged husband, in his will, declared the children to be illegitimate. Said Mr. Justice SWAYNE, in delivering the opinion of the Court: "Under such circumstances, the law makes no presumption. The question to be determined was one of fact and not of law."

There is nothing in either of these cases in conflict with those previously cited. On the contrary, in *Blackburn* v. *Crawford* the will and declarations of the father were received as competent evidence tending to disprove the marriage and the legitimacy of the children; and in *Clayton* v. *Wardell*, Mr. Justice HARRIS, in delivering the opinion of the Court, said: "But I am unable to see why it should be necessary to prove the first marriage by eye-witnesses of the ceremony, or those who heard the marriage agreement. In every other case the acts and admissions of a party, even though he be accused of a capital offense, are evidence against him. It is not easy to say why such evidence should not be received to prove a marriage."

It cannot be denied that in an issue touching the legitimacy of the children, the parents, if living, would be competent witnesses to prove the marriage, and I think it is equally clear, both on reason and authority, that after the death of the parent his admissions are likewise competent for the same purpose, and if the oral admissions would be competent, written declarations should be entitled to at least as much weight. (1 Greenl. Ev., Sec. 104.)

But it is claimed by counsel that such admissions, if admissible at all, are only so, first, when the facts are not sus-

ceptible of more direct and positive proof; or, second, when they are verbal acts, constituting part of the *res gestæ.* I do not understand the rule to be thus limited. In *Blackburn* v. *Crawford, supra,* the declarations and will of the father, though of recent date, were admitted to disprove the marriage.

In the same case, the declarations of a deceased sister of the alleged wife, to the effect that she was present at the alleged marriage, were offered to be proved. But the Supreme Court held the evidence to be incompetent, on the ground that the sister was in nowise related to the family of the person last seized of the estate, and did not come within the rule which permits the declarations of deceased members of a family to be given in evidence on questions of pedigree. But the Court say: "To prove this relationship, it was competent for them to give in evidence the declarations of any deceased member of that family."

I am therefore of opinion that the recitals in the will were competent evidence, tending to establish the marriage and the legitimacy of the children. But the Court below held that even though the recitals be competent they did not of themselves constitute *sufficient* evidence on this point, in the face of the fact that the alleged wife was a competent witness to prove the marriage, but was not called for that purpose. Competent evidence tending to prove the fact in issue is ordinarily sufficient in the absence of all rebutting evidence. But there are cases in which the evidence, though competent and sufficient as far as it goes, yet falls short of proving the whole fact in issue. If it became material to prove that A. or B. had notice of a particular fact it would be competent to prove by A. that he had no notice. But that would not tend to prove that B. had not, and unless the want of notice to B. was proved the point in issue would not

CAL. REPS. XLVI—80

be established.    Such was the case of *Williams* v. *East India Company*, 3 East, 192, cited by plaintiff's counsel. The plaintiff in the action was the owner of a vessel on which the defendant had caused to be shipped a quantity of combustible material, which took fire and damaged the vessel.    The plaintiff alleged that no notice was given to the officers of the vessel of the combustible nature of the material.    ·This was the point in issue; and it appeared at the trial that the first mate, who received the goods on board, was ᴄ ead; but that the person who delivered them on board was living, and his testimony might have been had.    The Court held that the burden of proof was on the plaintiff to show the want of notice; and he accordingly called the master and second mate, who testified that they had no notice; but he omitted to call the person who delivered the goods on board, to prove that the first mate had no notice.    On these facts the Court properly nonsuited the plaintiff, on whom it was incumbent to prove that neither the master or *either* of the mates had notice.    He proved that the master and second mate were not notified, but there was no proof as to the first mate.    The testimony was competent and sufficient as far as it went, but it did not go far enough.    It was wholly silent as to a material element in the question of notice, to wit: notice to the first mate.    There is no analogy between the principle settled in that case, and the question involved in this: if Pearson's will was competent and tended to prove anything touching the marriage, it tended to prove the whole point in issue, and not only one branch of it. The question of the marriage was a unit, and not divisible into several parts, as was the question of notice in the case cited.    If the will tended to prove anything on that subject it tended to prove all that was involved in that issue.

It might, and doubtless would have been more satisfactory if the defendants had called witnesses to prove the marriage, or had established it in some of the more usual methods.

But as the will was competent evidence tending to prove the fact and was admitted without objection, it ought not to be disregarded merely because fuller proof might have been made. If the rule were otherwise, a party could never safely rest on competent and uncontradicted evidence, tending to prove the fact in issue, if it appeared he might have made fuller proof.

It is urged, however, by the defendants, that the plaintiff is estopped, by the decree of distribution, from claiming any portion of the estate. But the Court below properly held the decree to be void as to the plaintiff, for want of jurisdiction over her person. Section one hundred and fifty-seven of the Probate Act requires that the order to show cause " shall be personally served on all persons interested in the estate, at least ten days before the time appointed for hearing the petition, *or* shall be published at least four successive weeks in some newspaper, as the Court or Judge shall order; provided, however, that if all persons interested in the estate shall signify, in writing, their assent to such sale, the notice may be dispensed with." By section two hundred and sixty, the foregoing provision is made applicable to proceedings for distribution. There were, then, three methods by which jurisdiction might be acquired: first, by a personal service on *all* persons interested in the estate; second, by publication for four successive weeks; third, by the assent, in writing, to the distribution, by all persons interested in the estate. It appears on the face of the decree that on the eighth of May the Court made an order directing all persons interested in the estate to appear on the fourth day of the following June, to show cause why an order distributing the estate should not be made; and also directing that notice be given by publication in a specified newspaper for four successive weeks. It appears on the face of the order that so much of it as related to the publication was impracticable. Between the eighth of May and

the fourth of June it was impossible to publish the notice for four successive weeks. The attempt to give notice by publication was therefore nugatory; and it does not appear that service was made or attempted, in any other method. Nor did the plaintiff, in any manner, appear in the proceeding. The decree, it is true, recites the appearance of Goad, who is represented as the "attorney appointed to represent the minor heirs of said estate." It appears by stipulation that when the will was admitted to probate, Goad was appointed "to represent the minor heirs named in said will only," and that on the settlement of the executor's account Goad appeared as the "guardian of the minors named in the will interested in said estate, *except the plaintiff*." There is nothing to show that he was the guardian of the plaintiff, or was ever appointed to represent her. Under these circumstances the recital in the decree of the appearance of Goad, the "attorney appointed to represent the minor heirs of said estate," must be construed as an appearance by him only for the minors whom he had been appointed to represent, and not for the plaintiff, for whom he had no authority to appear.

The decree recites the method adopted to acquire jurisdiction over the persons of those interested in the estate; and it affirmatively appears in the body of the decree that this method was ineffectual. When the record discloses what was done to acquire jurisdiction, "it will not be presumed that something different was done." (*Hahn* v. *Kelly*, 34 Cal. 407.) The Court therefore never acquired jurisdiction over the person of the plaintiff; and as to her the decree is void.

Judgment reversed and cause remanded for a new trial.