[L. A. No. 1054.   Department Two.—January 17, 1902.]

JOSIAH RUSSELL, Administrator with Will annexed, etc., Appellant, v. MARIA M. LANGFORD, Respondent.

ACTION FOR MONEY LOANED BY TESTATOR—GIFT—SUPPORT OF FINDING—CONFLICTING EVIDENCE.—In an action for money loaned by a testator to the defendant, a finding that certain sums sued for were a gift from the decedent to the defendant is sufficiently supported by substantial evidence that the gift was made, notwithstanding conflicting evidence as to the intention of the testator to make the gift.

ID.—EVIDENCE—ABSENCE OF HEIRS—WILL OF TESTATOR—FAMILY RELATIONSHIP.—Evidence was admissible to show that the testator had no child, wife, or parents to provide for, as bearing on the probability of the gift to the defendant; and his will, executed shortly after the alleged gift, was competent evidence as to his family relationship.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. W. F. Fitzgerald, Judge.

The facts are stated in the opinion of the court.

Aylett R. Cotton, and Tanner & Taft, for Appellant.

A. R. Metcalfe, and Anderson & Anderson, for Respondent.

THE COURT.—The complaint contains four separate causes of action for moneys alleged to have been loaned by plaintiff's testate to defendant at different times. The case

was tried before the court, findings filed, and judgment entered for plaintiff, upon the first and fourth causes of action, amounting to the sum of twelve hundred dollars, besides interest. The second and third causes of action alleged that the testate loaned to defendant the sums of seven thousand dollars and two hundred dollars, respectively, on the fifteenth day of March, 1898, and that the same remain due and unpaid. The court found that the said sums were received by defendant at the times alleged, but that they were "intended by deceased as a gift to defendant, and received by her as such."

The plaintiff made a motion for a new trial, which was denied, and this appeal is from the judgment and order denying a new trial. The evidence is claimed to be insufficient to justify the finding that the $7,200 was a gift, and this is the principal question in the case. There is evidence in the record sufficient to sustain the finding.

It appears from the testimony of defendant that deceased, Calderwood, and the husband of defendant, who died several years ago, were friends of long standing. They were neighbors in Clinton County, Iowa, long before the deceased husband of defendant came to California. Calderwood was at all times up to his death a resident of Lyons, in the state of Iowa. Defendant and her husband up to the time of his death resided in Pasadena, Los Angeles County, California, and defendant has ever since resided there. Plaintiff's testate visited defendant and her husband before the latter's death, and some ten years before the trial of this case, and then first met the defendant. Some time after this visit the defendant's husband died, and she had litigation with some of his heirs in regard to his will. The litigation resulted favorably to defendant, and deceased, Calderwood, wrote to her congratulating her upon the result. Defendant afterwards met Calderwood, in the spring of 1897, while visiting her mother, in Fullerton, Illinois. After this some correspondence was carried on between them. Calderwood wrote to defendant, asking her about the expenses she had been put to in her litigation, and offering to let her have two thousand dollars. She answered his letter, declining to borrow the money or receive it at that time. In the fall of 1897 deceased came to California on a pleasure trip, and went direct to Pasadena.

He was a bachelor, of the age of about eighty-seven years, and the owner of an estate of about seventy thousand dollars. When he came to Pasadena, he first lived at Marengo Hall, but visited defendant frequently at her home, as an old friend of her deceased husband. During these visits he told defendant that he had come to California to be married, and finally asked her to marry him. She consented, but mentioned certain conditions as to her daughter Mabel. After the engagement, about January 1, 1898, the deceased went to defendant's home and resided there. Defendant was in debt about seven thousand dollars, and had mortgaged her property. This indebtedness existed at and prior to the time the deceased came to California in 1897. After the engagement deceased and defendant talked over this indebtedness, and he told her he would give her the money to pay it. He remarked that in order to prove that he meant what he said he would give defendant his note for the amount. He then wrote, signed, and delivered a note, as follows:—

"Pasadena, January 17, '98. On or before the 20th of March, 1898, I promise to pay Mrs. Langford $7,000, seven thousand, with interest of 7½ per cent until paid.

"Thos. Calderwood."

He afterwards told defendant that he had sent for the money. On March 14, 1898, he deposited to the credit of defendant in the First National Bank of Pasadena the sum of $7,200, which she subsequently drew and used in paying off her indebtedness. It seems that the seven thousand dollars was not enough to pay the defendant's indebtedness and interest, and Calderwood told her he would give her the two hundred dollars additional, making a total of $7,200. Defendant then wrote across the face of the note "Paid."

After this some misunderstanding arose in regard to defendant's daughter Mabel, the engagement was broken off, and in the latter part of April, 1898, deceased returned to Iowa. He commenced this action in May, 1899, but died before the trial thereof.

The above testimony of defendant is substantially without contradiction, except as to two material matters. The deposition of Calderwood was taken, and he expressly admits the visits to defendant, the residence at her house, the letters, and the fact of depositing the money to her credit in the bank.

He denies that it was intended as a gift, but admits that he took no note or security for it, or that any time or rate of interest was agreed upon, or even mentioned. He says that he has no *recollection* of having signed the promissory note, but does not say that he did not sign it. Defendant testified positively that he wrote it and signed it, and Stuart, the teller of the bank where the money was deposited, testified that he knew Calderwood's handwriting, and that he believed the signature to the note to be that of Calderwood. No witness was called by plaintiff to dispute the handwriting of the note. He denied that he was ever engaged to be married to defendant, but in a letter dated July 19, 1898, written to defendant from Calderwood's home in Iowa, he used this language: "Had it not been for Mabel, there would have been something else, but it may be for the best."

From the above evidence, we think the court below was justified in making the findings.

As to the moral justification of defendant in her own mind, in keeping the money under the circumstances, we are not called upon to pass judgment. It has not been claimed that Calderwood at the time was incompetent or acting under duress or undue influence, and, we think, the safer rule for society is not to relieve a sane man from the consequences of his deliberate acts for light or trivial reasons. The money was Calderwood's. It was part of the fruits of his life-work upon his farm in Iowa. He had no child, wife, father, or mother. If he deliberately desired to be generous to his intended, it was his own money and his own business.

It is contended that the court erred in admitting in evidence under plaintiff's objection a certified copy of the will of Calderwood. The objection to its introduction was upon the ground "that it is not competent for any purpose in this suit, and, secondly, that the will is not dated at the time of any of these transactions." There was no error in this ruling. Evidence that the testator had no children or parents to provide for, had some bearing on the probability of the gift to respondent, and was therefore relevant and admissible for what it was worth. And the will was competent evidence as to his family relationship. (*Pearson* v. *Pearson,* 46 Cal. 609, and authorities there cited.) The will was dated October, 1898, and was

republished, with a codicil, in August, 1899. These dates were immediately after the alleged gift. This action was commenced in May, 1899, by Calderwood himself, who died shortly afterward. The objection to the will on account of its date is therefore not good.

The judgment and order appealed from are affirmed.