[Civ. No. 4759. Third Appellate District.—March 16, 1933.]

DORIS M. MILLER, Appellant, v. JOE MAGILL, Respondent.

J. Oscar Goldstein for Appellant.

Ware & Ware for Respondent.

PARKER, J., *pro tem.*—The action was to recover moneys alleged due and owing from defendant on account of loans and advancements. The case was tried by jury, and after a verdict returned in favor of defendant, judgment was accordingly entered. A motion for a new trial was denied. This appeal follows, plaintiff being the appellant.

No assignment is made of the insufficiency of the evidence to sustain the verdict. It is not claimed by appellant that the evidence, as a matter of law, is insufficient to justify the verdict and judgment. The foregoing statements are taken *verbatim* from appellant's brief. Nor is complaint made of the action of the trial court in instructions given, modified or refused. The entire appeal involves certain claimed errors in the admission and rejection of testimony.

That the specifications of error may be discussed it becomes necessary to give some general outline of the case.

While the complaint was in three counts, each seeking recovery of a specific amount, the real controversy results from one transaction involving the receipt by defendant of the sum of $1500, which amount admittedly passed from plaintiff to defendant. The aggregate of all the sums claimed was $1726.25, but no point is made on the appeal in so far as the smaller amounts comprising the balance might be involved. As to this $1500 the plaintiff contends that she loaned this sum to defendant upon an implied promise of repayment. Defendant, admitting receipt of the money, classes it as a gift.

For some six or seven years defendant had been in the employ of the family of plaintiff, said family consisting of plaintiff and her husband, now deceased. After the demise of the husband, defendant continued in the employ of plaintiff. The nature of his employment was as a chauffeur.

It appears that plaintiff left the United States on a journey to Europe, just a pleasure tour. Prior to her departure she arranged with a trust company to care for certain business affairs during her absence, and the trust officer having immediate charge of her affairs was one Sims. Defendant was left at the home of plaintiff with general minor duties, such as keeping the automobiles in condition, preserving the household intact, etc.

It is conceded that Sims was not the general agent of plaintiff nor was he endowed with any authority as to the subject matter of this action. His status here is simply as a means or medium of communication with the plaintiff while and when the latter was absent.

The defendant Magill, during the absence of plaintiff, became desirous of establishing himself in business. He required funds. He discussed the matter with Sims and the latter sent a cablegram to plaintiff reading as follows: "Joe wants fifteen hundred dollars to buy garage business, Castroville—apparently good proposition—shall we pay him—cable reply." The answer received from plaintiff was as follows: "Pay Joe—hope he is successful—your letters not received—hope everything is O. K.—we are fine—regards."

Plaintiff admitted receipt of the cablegram and the sending of the answer. Her counsel then asked her: "What did you understand by this cablegram?" Objection was interposed by defendant, and sustained. The first assign-

ment of error centers about the court's ruling on this question. Much argument supports the contention, and many authorities are cited and rules of evidence quoted.

We find nothing to be gained by any extended analysis of the point. Should we find the error as claimed we would then be required to determine whether or not any harm or prejudice to appellant resulted. If the question had been permitted, appellant claims that she would have answered that from the wording of the cablegram, and from all of the circumstances existing, she understood the message as an application for a loan rather than a request for a gift. The evidence thus brought out would have been cumulative. The appellant testified not once, but many times, that the transaction, from her viewpoint, at all times was a loan, and that she always understood it so to be. All of the evidence on both sides was on this issue and the phase of the case, relative to appellant's understanding of the situation, was fully developed. Therefore, we conclude that it is unnecessary to review the entire field of evidence and scrutinize the cases wherein it has frequently been held that under given conditions one may testify as to intent or motive. No injury could possibly have resulted from the trial court's ruling in this case, and the error would be insufficient to disturb the judgment.

■ On the trial defendant was permitted to prove the value of the estate left to plaintiff by her deceased husband; he was permitted to show further that at the time of her marriage the plaintiff was a person of little means, dependent entirely upon her own efforts for support. This evidence was allowed over the strenuous and persistent objections of appellant.

Before discussing the merits of the objections, it would be well to further outline the picture presented from the record. There were but two witnesses who could throw any clear light upon the transaction. Plaintiff, who had parted with the money, and defendant, who had received it. Plaintiff claimed she loaned the money, and defendant's claim was that a gift was made to him. If the record stopped there, the jury would be put to somewhat of a hazard in speculating where the truth might be, and a verdict either way would find support. In other words, assuming each party appeared worthy of belief, the case would stand in

418

balance. In *Steel* v. *Sun Insurance Office*, 171 Cal. 795 [155 Pac. 72, 75], there was before the court the question as to whether or not a fire insurance company had given oral consent that certain merchandise be covered after removal from one building to another. Plaintiff there had testified that consent was given, and defendant denied such an understanding. Plaintiff then offered testimony to show that the building to which the goods had been removed was a less hazardous building than the one in which the merchandise had formerly been kept. The court held such evidence admissible, saying: ''It was material upon the disputed question whether or not the companies' agents had consented to continue the risk in the new place, showing that it was not against their interest and, consequently, that it was more probable that they would consent than if the risk had been thereby increased.'' The rule thus recognized and stated is one of logical probability. Reasonably construed it renders material any fact or facts that have a reasonable tendency to facilitate a fair conclusion on a controverted issue. We can see nothing that would be of greater aid to a jury in determining an issue of loan or gift than a complete disclosure of the relative positions of the parties at the time involved.

It is urged that if a jury is permitted to learn that one party is rich and the other poor, the verdict will reflect either sympathy or prejudice, with a total disregard of justice. It is claimed that experience affords a background for such an argument. Yet, recorded protest seems to indicate that both the rich and the poor remain malcontent. The rich decry the denial of even justice because of prejudice; the poor complain of the inequality that wealth creates. It is an age-old problem, and we seem no nearer a solution than when it first arose. But on the whole we find that rarely, if ever, has the law in its functioning warranted the criticism of either the rich or the poor. It so happens, fortunately or unfortunately, as the case may be, that one's relative status is often determined by his or her wealth. This results favorably, as well as unfavorably, so that no peculiar hardship results, if we concede this much. We are not prone to give to the argument all of the weight that appellant claims for it. Where it appears in a case that either party has purposely and designedly stressed the point of

the comparative wealth of the parties, we are then presented with a question of wilful misconduct, and the case will be treated accordingly. For instance, if in a case involving one of the nation's well-known financiers and capitalists, evidence were allowed showing his wealth, there could be little harm done, inasmuch as it would be evidence of a well-known fact, and little harm could result from its admission. However, if the fact of wealth should be urged as a reason why other facts should be disregarded or otherwise actively used to create prejudice, error would result. So in the instant case we may assume that the wealth of the plaintiff was a fact of common knowledge in the small community wherein the parties resided, and from which the jury was drawn. No person can be worth half a million dollars in a small community and conceal the fact. But aside from any question of general knowledge, the admitted facts, aside from the objectionable evidence, demonstrated the situation. It was in the record that defendant had been some six years in plaintiff's employ as a chauffeur; that her garage contained four automobiles of expensive make; that she owned a hunting lodge and one or two summer homes; that at the time of the transaction under discussion she was traveling through Europe with a woman companion, and that during her absence at least two attendants were kept at her home. Also, it was shown that prior to her husband's death much of the time was spent in travel and diversion of expensive character. These facts must have created an impression of wealth, aside from direct evidence on the subject.

Lastly is complaint made on the reception of evidence to the effect that plaintiff's present resources were the fruits of inheritance, without which she would be impoverished and with no independent means. Appellant argues that this evidence was a mute argument to the jury that inasmuch as her money was practically a gift to her, the defendant might well be given a small amount on general notions of distribution. We are of the opinion that the question is one primarily of argument, and should have been addressed to the jury, as no doubt it was.

We are not inclined to go too far in imagining what does or what does not influence the verdicts of the juries. There was before the jury evidence of friendly and confidential

relationship between plaintiff and defendant. It can readily be inferred that if plaintiff was a person whose pre-marital status had been that of a self-supporting worker, such a friendliness might perhaps have been more natural than in the case of one "to the manner born". There was evidence introduced to the effect that the husband of plaintiff and plaintiff had relied much upon the service of defendant; that both the husband and wife had often expressed the intention of doing something for defendant in the way of setting him up in some little business. The fact that the husband had deceased, and that the widow's wealth was of his bounty was not so far from the issues of fact as to be deemed prejudicial to the extent demanding reversal. As a general rule of law and practice the courts are directed to make the fullest possible investigation into cases where a gift is claimed, and a recognition of such a rule may be found throughout the reports of both the Appellate and Supreme Courts. (*Kennedy* v. *Scally,* 62 Cal. App. 367 [217 Pac. 96]; *Monnette* v. *Title Ins. etc. Co.,* 107 Cal. App. 313 [290 Pac. 668]; *Union Mutual Life Ins. Co.* v. *Broderick,* 196 Cal. 497 [238 Pac. 1034]; *Field* v. *Shorb,* 99 Cal. 671 [34 Pac. 504]; *Russell* v. *Langford,* 135 Cal. 356 [67 Pac. 331]; 28 Cor. Jur. 674.)

In passing we might add that if the situation had been reversed and if the amount involved had been the widow's mite, appellant would be here strenuously and successfully contending contrariwise to her present argument.

Regardless of speculations justifying the admission of the evidence, it is not contended that it is untrue, nor does it cast reflection upon plaintiff. Appellant admits the evidence sufficient to sustain the verdict, and a careful reading of the transcript confirms the admissions.

We deem appellant's grievances greatly imaginative. Quoting with approval from respondent's brief: "We have a story of years of loyal and intimate service; of promises of a gift; of application for the gift; of its approval by the one person in California at the time who was in the trust of appellant; an exchange of cablegrams directing, without question, payment."

All in all, the case was fully and fairly tried, and the jury was instructed on the law applicable. Inasmuch as the issues presented did involve much that was personal between the

parties, it was but natural that the scope of inquiry became somewhat broadened. But we fail to find where any injustice has resulted.

The judgment is affirmed.

Thompson, J., and Plummer, Acting P. J., concurred.