[Sac. No. 820.   In Bank.—December 23, 1902.]

SAM J. PULLEN et al., Executors, etc., of John W. Clarke, Sr., Deceased, Appellants, v. PLACER COUNTY BANK (a corporation), Respondent.

CHECK—PAYMENT AFTER DEATH OF DRAWER—GIFT—ASSIGNMENT.—A check given without consideration, with directions to the payee not to present it for payment until after the death of the drawer, and which is not so presented until after his death, is neither a completed gift nor an assignment of the funds drawn against; and the bank on which the check was drawn, if it pays the check after the death of the drawer, with knowledge of the fact, is liable for the amount thereof to the estate of the drawer.

APPEAL from a judgment of the Superior Court of Placer County. J. E. Prewett, Judge.

The facts are stated in the opinion of the court.

F. P. Tuttle, Lee E. Wallace, Charles Tuttle, and Stoney, Rouleau & Stoney, for Appellants.

John M. Fulweiler, for Respondent.

HARRISON, J.—This cause was submitted to the superior court upon an agreed statement showing the following facts,— viz.: In November, 1897, John W. Clarke, Sr., had on deposit with the defendant the sum of twelve hundred dollars, which remained on such deposit until after his death. During that month, for the purpose of making a gift of one thousand dollars to his son, John W. Clarke, Jr., he drew a check upon the defendant for that amount of money, and delivered it to his son, saying that he could get the money from the bank; but, after delivering it to him, stated that he wished he would not present it until after his death. The son complied with his wish, and did not present the check until the morning after his father's death. He died September 29, 1898, and on September 30th the son presented the check to the bank, and it was paid. The bank had, however, been informed of the death of the father before the check was presented for payment. The present

action is brought to recover from the bank the amount of the check as money deposited with it by the deceased, and held on deposit at the time of his death. The superior court rendered judgment in favor of the defendant, and the plaintiffs have appealed.

The question presented upon the appeal is whether under the above facts the intended gift of the father to the son had become complete before his death, or whether it was merely inchoate. If the transaction between them constituted a completed gift, the money represented by the check belonged to the son, and the bank was justified in paying it to him, while, on the other hand, if the gift had not been perfected, but was incomplete at the time of his death, the money in the bank belonged to his estate and descended to his heirs, and its payment by the bank was unauthorized.

Section 1146 of the Civil Code defines a gift to be "a transfer of personal property made voluntarily and without consideration"; and under section 1147 a verbal gift is invalid unless accompanied by a delivery to the donee of the thing given, if it is capable of delivery, or of the means of obtaining its possession and control. "There can be no gift without an intention to give and a delivery, either actual or constructive, of the thing given. There must be both a purpose to give and the execution of this purpose. The purpose must be expressed —either orally or in writing—and it must be executed by the actual delivery to the donee of the thing given, or of the means of getting possession and enjoyment thereof. It is the fact of delivery that converts the unexecuted and revocable purpose into an executed and complete gift." (Knight v. Tripp, 121 Cal. 674.) A gift vests the donee with the absolute property in the thing given, and it is no longer subject to the control of the donor. If, on the other hand, the thing given remains under the control of the donor, or (except in the case of a gift causa mortis) is subject to his revocation, his gift is not complete. There is no difference, however, in this particular between a gift inter vivos and a gift causa mortis. In either case it is not complete unless there is either an actual or symbolic delivery to the donee of the thing to be given. (Knight v. Tripp, 121 Cal. 674.) In the present case the gift was verbal, and the property which the father intended to

give to his son was money on deposit in the bank. The check was not itself the property which the father intended to give, but was merely a direction to the defendant to pay one thousand dollars to the son. It indicated the amount to be given and the place at which the money was to be delivered. The check was not a symbolic delivery of the money, but it was a delivery of the means by which the son could obtain possession of the money. It was, however, subject to revocation by the father at any time before its presentation to the bank, and was in fact revoked by his death. The request of the father that the son would not present the check until after his death did not affect the sufficiency of the gift. If the gift were complete by his delivery of the check, such subsequent request would not destroy its validity, and if not then complete, this request would not have the effect to dispense with its presentation for the purpose of making it complete. By the failure of the son to present the check, there was no delivery of the money during the lifetime of the father, and the gift was therefore not complete.

This question has frequently arisen in cases where a gift *causa mortis* is claimed by reason of a check given for that purpose, but it is invariably held that unless the check is presented in the lifetime of the donor it is ineffective. (*Harris* v. *Clark*, 3 N. Y. 93;[1] *In re Beak's Estate*, L. R. 13 Eq. 489.) Under a state of facts similar to those in the present case presented in *Simmons* v. *Cin. Savings Society*, 31 Ohio St. 457,[2] the court held that the gift was incomplete, say:ng: "Until the check was either paid or accepted the gift was incomplete; and in the absence of such payment or acceptance the death of the drawer operated as a revocation of the check. It is well settled that, in order to constitute a valid gift, there must be a complete delivery of the subject of the gift, either actual or constructive. The check in the present instance was a mere order or authority to the payee to draw the money; and being without consideration, it was subject to be countermanded or revoked while it remained unacted on in the hands of the payee." The same rule is declared in *Hewitt* v. *Kaye*, L. R. 6 Eq. 198; *Second Nat. Bank* v. *Williams*, 13 Mich. 282; *Thresher* v. *Dyer*, 69 Conn. 404;

---

[1] 51 Am. Dec. 352, and note.     [2] 27 Am. Rep. 521.

*Gerry* v. *Howe*, 130 Mass. 350; *Appeal of Waynesburg College*, 111 Pa. St. 130.[1]

The relation between a bank and its depositors is that of debtor and creditor respectively, and the money deposited with the bank becomes its property, and is no longer under the control of the depositor. A check is only a direction to the bank to pay a certain sum of money to the person therein named. The money does not thereby become the property of the payee, nor is it placed beyond the control of the depositor. Until it is presented to the bank, the drawer may countermand its payment, or he may direct a different disposition of the moneys to his credit in the bank.

Neither does a check of itself before presentation operate as an assignment to the payee of the money for which it was drawn. "An ordinary uncertified check upon a general account is neither a legal nor an equitable assignment of any part of the sum standing to the credit of the depositor, and confers no right upon the payee that he can enforce against the bank." (*O'Connor* v. *Mechanic's Bank*, 124 N. Y. 324.) "A check upon a bank in the usual form, not accepted or certified by its cashier to be good, does not constitute a transfer of any money to the credit of the holder; it is simply an order which may be countermanded and payment forbidden by the drawer at any time before it is actually cashed. It creates no lien upon the money which the holder can enforce against the bank. It does not of itself operate as an equitable assignment." (*Florence Mining Co.* v. *Brown*, 124 U. S. 385.) In *Hopkinson* v. *Forster*, L. R. 19 Eq. 74, the Master of the Rolls, Sir George Jessel, said: "A check is clearly not an assignment of money in the hands of a banker; it is a bill of exchange payable at a banker's. The banker is bound by his contract with his customer to honor the check when he has sufficient assets in his hands. If he does not fulfill his contract he is liable to an action by the drawer in which heavy damages may be recovered if the drawer's credit has been injured;" and referring to some expression of Mr. Justice Byles, said: "I am quite sure that learned judge never meant to lay down that a banker who dishonors a check is liable to a suit in equity by the holder." (See, also, *Chap-*

[1] 56 Am. Rep. 252, and note.

*man* v. *White*, 6 N. Y. 412;[1] *Bullard* v. *Randall*, 1 Gray, 605;[2] *Harrison* v. *Wright*, 100 Ind. 515;[3] *Dickinson* v. *Coates*, 79 Mo. 250;[4] *National Com. Bank* v. *Miller*, 77 Ala. 168;[5]; *Attorney-General* v. *Continental Life Ins. Co.*, 71 N. Y. 325.[6])

If it could be held that by drawing a check the drawer thereby assigned that amount of money to the payee, it would follow that the money represented by the check became thereby the property of the payee, and that he could maintain an action against the bank for its recovery, subject to any defense that the bank might have against the depositor; but the almost universal line of authority is, that such action cannot be maintained. The bank upon which a check is drawn has no contract with the payee, and is under no legal obligation to him, and its refusal to pay the check does not give to the payee a right of action against it. "The holder takes the check on the credit of the drawer, in the belief that he has funds to meet it, but in no sense can the bank be said to be connected with the transaction. If it were true that there was a privity of contract between the banker and holder when the check was given, the bank would be obliged to pay the check, although the drawer before it was presented had countermanded it, and although other checks drawn after it was issued, but before payment of it was demanded, had exhausted the funds of the depositor. If such a result should follow the giving of checks, it is easy to see that bankers would be compelled to abandon altogether the business of keeping deposit accounts for their customers." (*Bank of the Republic* v. *Millard*, 10 Wall. 152.) The same rule is declared in *First Nat. Bank of Washington* v. *Whitman*, 94 U. S. 343; *Carr* v. *National etc. Bank*, 107 Mass. 45;[7] *Boettcher* v. *Colorado Nat. Bank*, 15 Colo. 16; *Grammel* v. *Carmer*, 55 Mich. 201;[8] *Brennan* v. *Merchants etc. Bank*, 62 Mich. 343; *Creveling* v. *Bloomsbury Nat. Bank*, 46 N. J. L. 255.[9] The authorities upon this subject are reviewed in *Fourth St. Bank* v. *Yardley*, 165 U. S. 634, and the rule stated to be: "As between a check-holder and the bank upon which such check is drawn, it is

[1] 57 Am. Dec. 464.

[2] 61 Am. Dec. 433.

[3] 58 Am. Rep. 805.

[4] 49 Am. Rep. 228.

[5] 54 Am. Rep. 50.

[6] 27 Am. Rep. 55.

[7] 9 Am. Rep. 6.

[8] 54 Am. Rep. 363.

[9] 50 Am. Rep. 417.

settled that unless the check be accepted by the bank an action cannot be maintained by the holder against the bank.  It is also settled that a check drawn in the ordinary form does not as between the maker and payee constitute an equitable assignment *pro tanto* of an indebtedness owing by the bank upon which the check has been drawn.''

In Illinois (*Munn* v. *Birch,* 25 Ill. 35) and in Iowa (*May* v. *Jones,* 87 Iowa, 188) it is held, contrary to the great weight of authority, that the drawing of a check upon his bank by the depositor has the effect to assign that amount of money to the payee of the check.  Of course, under this rule a right of action would be thereby created in favor of the payee of the check, and accordingly it is held in these states that the payee may maintain an action against the bank for the amount of the check.   The doctrine is, however, somewhat modified in Illinois, in *Bank of Antigo* v. *Union Trust Co.,* 149 Ill. 343, where it is held that the check operates as such assignment only as between the drawer and the payee, and that the bank cannot be held liable until notified of the assignment by a presentation of the check for payment.  It seems illogical, however, to hold that by drawing a check the money is assigned to the payee, and also that the owner may afterwards by drawing other checks take from the bank the money which he has once assigned.  In Kentucky, different from any other jurisdiction, it is held that the bank holds the money of its depositor as bailee, and agrees as a part of its business to pay this money out as the depositor may draw his checks for it.   (See *Weinstock* v. *Bellwood,* 12 Bush, 139.)   In a note by Professor Ames to *Hopkinson* v. *Forster,* L. R. 19 Eq. 74, in Ames's Cases on Bills and Notes (vol. 2, p. 735) he says: ''It is perfectly clear that the holder of an uncertified check has no claim either at law or in equity against the bank upon which it is drawn''—citing a large number of authorities in support of the proposition.

*Wheatley* v. *Strobe,* 12 Cal. 92,[1] and *Pope* v. *Huth,* 14 Cal. 403, cited by the respondent, were neither of them the case of a check, but were cases in which a bill of exchange was drawn for the full amount of a debt owing by the drawee to the maker of the bill, and it was held that an equitable assignment

---

[1] 73 Am. Dec. 522.

of the debt was thereby created. There can, however, be no equitable assignment of a chose in action for which there is a want of consideration. (*Second Nat. Bank* v. *Williams*, 13 Mich. 282.) Nor can there be an equitable cause of action for the enforcement of a gift. Equity will not lend its aid to perfect a gift that is incomplete. In *Cloyes* v. *Cloyes*, 36 Hun, 145, the plaintiff sought to recover from the defendant the amount of a check which he had drawn in her favor as a gift. The court said: "The action cannot be maintained upon the theory that the check was a valid gift. The word 'gift' signifies an actual transfer *in præsenti* of property without consideration. The check did not transfer *in præsenti* to the payee four hundred dollars or any part of the fund standing to the credit of the drawer upon the books of the drawee. It was a naked promise. The check being without consideration, this action cannot be sustained. There is a broad distinction between the gift of the check or obligation of a third person and a gift of the donor's promise to pay."

Under these authorities, it must be held that the payment of the check by the bank was unauthorized; that the money deposited with it by the plaintiffs' testator, and held by it at the time of his death, was a part of his estate, and that the plaintiffs are entitled to recover the same from the defendant.

The judgment is reversed, and the superior court is directed to enter judgment upon the agreed statement of facts in favor of the plaintiffs.

Van Dyke, J., and Temple, J., concurred.

Garoutte, J., concurred in the judgment.

McFARLAND, J., dissenting.—I dissent, and think that the judgment should be affirmed. I adhere to the opinion delivered in Department; and in addition to the views there expressed I desire to say this: The legal right of the bank to pay the check was in no way affected by the fact that it was a gift. It was a negotiable instrument in due form having the genuine signature of the drawer, and the bank was in no way called upon to inquire why it had been drawn. It did not know that the check was a gift—whatever consequences might have attached to such knowledge. It is beyond question, then,

that appellants' whole case rests upon the asserted proposition that the death of the maker of a negotiable check revokes the instrument. To that proposition I cannot assent. If the death of the maker, *ipso facto,* revokes the instrument, as in ordinary cases of principal and agent, then that result follows irrespective of the knowledge of the bank that such death had occurred. Certainly the general banking business of the country is not conducted upon any such notion. A paying teller of a busy bank postponing the payment of checks until he can by messenger, telephone, telegraph, or mail learn whether the payors have died since signing, would be a curious spectacle. If such precautions were necessary, banking business would be paralyzed.

It is said that Clark, Sr., might have countermanded the check before it was paid, or have drawn out the money on other checks. But he did not do so; neither did any other person representing him. A power of revocation is of no consequence unless exercised in the lifetime of the party holding it. This is so even in trusts. In *Stone* v. *Hackett,* 12 Gray, 232, the court say: "A power of revocation is perfectly consistent with the creation of a valid trust. It does not in any degree affect the legal title to the property. That passes to the donee, and remains vested for the purposes of the trust, notwithstanding the existence of a right to revoke it. If this right is never exercised according to the terms in which it is reserved, as in the case at bar, until after the death of the donor, it can have no effect on the validity of the trust or the right of the trustee to hold the property." The same principle applies in the case at bar. In nearly all the cases relied on for appellants the party on whom the check was drawn had received some notice of countermand or objection to the validity of the check, and had refused to pay it; and in most of them the action was by the drawee against the payor, which kind of action, according to some of the authorities, can never be maintained. For instance, in *Simmons* v. *Savings Society,* 31 Ohio St. 457,[1] much relied on in support of appellants' position, the administrator of the deceased drawer had notified the defendant not to pay the check, and had undertaken to revoke it, and defendant had refused to pay it. In

[1] 27 Am. Rep. 521.

*Fourth Street Bank* v. *Yardley,* 165 U. S. 643, it was merely held that "as between a check-holder and the bank" the former cannot maintain an action against the latter, unless the check be accepted by the bank; and that the mere giving and receiving of such a check without its presentation and payment does not give the holder a priority over the general creditors of an insolvent. There are many authorities contrary to both these propositions; but those questions do not arise in the case at bar; here the check was accepted and paid in due course. The action is not brought by the holder of a check against the bank; neither does any question arise here about the assignment, equitable or otherwise, of a fund. The only question is whether after a bank has paid a genuine negotiable check of its customer it can be made to pay it again for the sole reason that the drawer had died the day before its presentation. Appellants have cited some authorities, a few of which apparently support this proposition, but they nearly all deal with cases where there had been an action by the holder against the bank. If there are any which hold that when the bank had accepted and paid the check, under circumstances like those in the case at bar, it can be made to pay it again, they are not founded on just principles and correct reasoning.

In my opinion, the true rule is stated in *McGregor* v. *Loomis,* 1 Disn. 247, where the subject of the legal significance of checks is fully discussed and the authorities cited. The court there says that a banker, following the ordinary business of his calling, "gives the community to understand that those who have funds in his hands have not only the right to draw upon the deposit, but that all drafts will be paid on presentation; he opens virtually a letter of credit to his depositor which is a guaranty to him, as well as to all who make advances upon the faith of it. For all practical purposes, it assimilates itself to a parol promise to accept any check that the owner of the deposit may draw; and thus the rule which binds the drawee of a bill of exchange as an acceptor, when he has promised in advance to honor it, furnishes a strong analogy," citing cases. The opinion contains a quotation from *Harris* v. *Clark,* 3 N. Y. 120,[1] as fol-

[1] 51 Am. Dec. 352.

lows: "The customer deposits his money in a bank for safekeeping, with the understanding that he may draw by checks, in such sums, and at such times, as may suit his convenience. The bank or banker receives it in that condition, and undertakes to keep the amount and pay the money accordingly. Checks are used and treated as cash, and by the course of business they are paid by the bank or banker on whom they are drawn with the same punctuality and certainty as if the deposits were specifically the money of the customers. Checks are therefore practically equivalent to a transfer of so much of the fund deposited." The same general principle is stated by this court in *Janin* v. *London and S. F. Bank,* 92 Cal. 22,[1] where the court says: "It is well settled that a bank, in receiving ordinary deposits, becomes the debtor of the depositor, and its implied contract with him is to discharge this indebtedness by honoring such checks as he may draw upon it, and it is not entitled to debit his account with any payments except such as are made by his order or direction. (*Crawford* v. *West Side Bank,* 100 N. Y. 50;[2] *Phœnix Bank* v. *Risley,* 111 U. S. 125.)" In *Hart* v. *Ketchum,* 121 Cal. 426, it was held that if the delivery of the bank-books, "the means of obtaining the money," had been intended as a gift *in præsenti,* the gift would have been perfect; and the principle there announced seems to cover the case at bar. It was there said that "*If* the donee is merely empowered to draw the money, and is thereafter to dispose of it in accordance with instructions from the donor, he is only an agent of the donor and his agency terminates with the death of the donor"; and is not that substantially a statement that if there had been no instructions as to the disposition of the money the doctrine of agency and its termination by death would *not* have applied? Of course, a bank is not bound to pay a check unless at the time of its presentation there are funds of the drawer to pay it with; and therefore the bank is in no danger of incurring the risk intimated in the leading opinion in the case at bar.

But, as hereinbefore stated, the question involved here relates to the rights of parties to a negotiable instrument, and not to the validity of a gift.

Henshaw, J., concurred.

---

[1] 27 Am. St. Rep. 82.          [2] 53 Am. Rep. 152.

The following is the opinion of Department Two, rendered on the eighteenth day of November, 1901, referred to in the dissenting opinion of Mr. Justice McFarland:—

McFARLAND, J.—Action by executors of John W. Clarke, Sr., deceased, against the Placer County Bank, a corporation, to recover one thousand dollars alleged to have been deposited by the decedent with the defendant and to have remained on deposit at the time of the decedent's death. Judgment was rendered for defendant, and plaintiffs appeal from the judgment. The case was tried without a jury and upon an agreed statement of facts.

In the month of November, 1897, the decedent had twelve hundred dollars on deposit in the bank of respondent. He wished to make a gift of one thousand dollars to his son John W. Clarke, Jr.; and for that purpose, in said month, he drew the following check on the respondent: "Pay John W. Clarke, Jr., or bearer, ($1000) one thousand dollars," and gave the check to John, Jr., saying he "could get the money from the bank." The following appears in the statement of facts: "However, after delivering the check he stated that he wished his son John, Jr., would not present the check until after his, John W. C., Sr.'s, death, and John, Jr., in consideration for his father's wish, kept the check and did not present it for payment until the morning after the death of his father, John W. C., Sr." Clarke, Sr., died on the 29th of September, 1898; and the next day the check was presented by John, Jr., to the bank and it was by the latter paid. At that time the respondent knew of the death of Clarke, Sr.

It is obvious that no importance attaches to the fact that "after delivery of the check" the drawer expressed his wish that the check would not be presented until after his death. Clarke, Jr.'s, rights, whatever they may be, were fixed by the delivery of the check and were not affected by what his father said afterwards; he could have cashed it immediately, and did not even say that he would not do so. We have therefore the simple case of a negotiable check on a bank made and delivered to the payee in the lifetime of the drawer, and not presented for payment until after the latter's death; but actually paid on presentation.

Appellants contend that the foregoing facts did not con-

stitute an executed gift, but was merely a promise *to* give because the drawer retained the power to substantially revoke it by drawing out the money before the presentation of the check given to his son, and because the money might have been levied upon by the drawer's creditors before such presentation. Some authorities in other jurisdictions are relied on; but they are mostly cases where insolvency had occurred between the drawing of a general check and its presentation, and creditors, receivers, etc., had intervened and prevented its payment; and it was held that such general check, unpaid and not certified by the drawee, did not create a preferred equitable lien on a special fund. We have been referred to no case where it was held that a negotiable check was not good *merely* because the drawer had died before presentation and payment. The check was itself property. If it had been presented the day before the drawer's death, the bank, of course, would have had no legal cause to refuse its payment; and what legal cause did it have for such refusal when it was presented the day after his death? How did his death affect the validity of the negotiable instrument in question? No rule like that which obtains in cases of agency can be here invoked. Of course, in such cases, when the principal dies the agency ends; but there is no relation of principal and agent between the parties to a negotiable instrument; it is the same after as before the death of the maker. It is said that Clarke, Sr., could have drawn the money from the bank at any time before Clarke, Jr., had presented the check in question. Certainly he had the naked power *to* perform that wrongful act, although he could not have done so rightfully; and in that event, if the bank, having no knowledge of the former check, had paid the second check of Clarke, Sr., as it might safely have done, then Clarke, Jr., would have been put to his remedy on his check against the drawer. But Clarke, Sr., did not do that act. When Clarke, Jr., presented the check, no other check having been presented, the bank would have had no defense for a refusal to pay it.

Our conclusion is, that the delivery of the check gave Clarke, Jr., who could have cashed it at any time, such immediate possession and control of the thing intended to be given as constituted a completed and perfected gift.

The judgment appealed from is affirmed.