[Civ. No. 624.   Third Appellate District.—November 12, 1909.]

## M. A. THOMAS, as Executor, etc., Appellant, v. RUSSELL W. LAMB, Respondent.

TRUST IN MONEY IN SAFE—DELIVERY OF KEY TO BROTHER—SPECIFIC DIRECTIONS AS TO USE—ACCEPTANCE OF TERMS.—The delivery of the key of a safe containing the money of a sister prior to her expected death to her brother, with specific directions to take the money and apply the same to pay her doctor's bill, her funeral expenses, and to place a stone at her grave, and to send the residue to her sister, all of which terms were accepted by the brother with an agreement to carry out her requests, created a trust in the money in the safe, and constituted the brother a trustee thereof upon the terms so agreed to.

ID.—"RELATION OF PERSONAL CONFIDENCE" VOLUNTARILY ASSUMED.— The "relation of personal confidence" voluntarily assumed by the brother with his sister as to the money placed within his immediate control made him her trustee, under the terms of section 2219 of the Civil Code.

ID.—SUBJECT OF VALID TRUST.—Since a lawful contract could have been made between the parties for the desired purpose, such purpose could be the subject of a valid trust under section 2220 of the Civil Code.

ID.—CERTAINTY OF TRUST—WORDS AND ACTS OF TRUSTOR.—By her words and acts the trustor indicated with reasonable certainty her intention to create a trust, and the subject, purpose and beneficiary of the trust, and therefore a trust was created as to the trustee under section 2220 of the Civil Code.

ID.—PAROL TRUST AS TO PERSONAL PROPERTY.—A trust as to personal property can be created by parol; and no set form of words is necessary to create it.

ID.—ACTUAL DELIVERY OF MONEY NOT ESSENTIAL.—The actual delivery of the money was not essential to the creation of the trust. It is sufficient that by delivery and retention of the key the trustee was vested with the control of, and dominion over, the money in the safe.

ID.—RETENTION OF MONEY IN SAFE UNTIL DEATH OF TRUSTOR IMMATERIAL.—The circumstance that the trustee retained the money in the safe, and did not take manual possession of it until after his sister's death, is immaterial, and cannot affect the validity of the trust.

ID.—FAIR INTERPRETATION OF TRANSACTION.—The fair interpretation of the transaction is that a trust was created with a present interest

transferred to the trustee, with directions to carry out the terms of the trust after the death of the trustor.

Id.—Doubt Resolved for Trustee—Expenditures in Good Faith.— Any doubt should be resolved in favor of the trustee, in view of his expenditures made in good faith of the funds according to the declared will of the deceased, and not so as to make him liable to refund all the money so expended to her estate.

Id.—Purchase of Hogs by Brother from Sister.—Where there was a fair transaction of a purchase of hogs by the brother from the sister in her lifetime, which were fully paid for by him to her, he cannot be held responsible for the value thereof to her estate.

APPEAL from a judgment of the Superior Court of Mendocino County, and from an order denying a new trial. J. Q. White, Judge.

The facts are stated in the opinion of the court.

J. E. Pemberton, and Robert Duncan, for Appellant.

Mannon & Mannon, for Respondent.

BURNETT, J.—Upon the undisputed facts the judgment of the trial court seems so equitable that it should not be disturbed unless clearly required by the mandate of the law.

The statement of the case, sufficient for the purpose of the decision, is made by respondent substantially as follows: The defendant and Anna H. Slingerland, who was his sister, lived in the same house on the ranch of the latter. She had a safe in which there was a sum of money; on the twenty-fourth day of October, 1906, a short time before her death—which occurred November 10th following—Mrs. Slingerland gave to the defendant the key to the safe and told him there was money in the safe and when she was gone she wanted him to take it and pay her doctor's bill and funeral expenses, buy a monument for her grave at a cost of $75 and whatever was left to send to her sister, Jane Donaldson; that at the same time she told him the safe was his; defendant said to Mrs. Slingerland that he would carry out her wishes in the matter; the morning after the funeral defendant opened the safe and found therein the sum of $442. Out of this money he paid $152 for funeral expenses, $117.50 for the doctor's bill; he purchased a monument for which he agreed to pay $65, and

sent the sister, Jane Donaldson, the sum of $160, aggregating about $53 more than he received.

The other transaction of which complaint is made relates to certain hogs sold by defendant. He and the deceased had been partners in the stock business and about August 1, 1906, they sold some hogs for $225; deceased proposed to defendant that if he would allow her $125 of this amount he might have the balance of the money and what hogs were left. The proposition was accepted by defendant. Subsequently he got up six or seven head of wild hogs having the Slingerland ranch mark. He fed them and finally sold them for about $60.

The only witness at the trial was defendant, who related what occurred between him and deceased on the night of the 24th of October, 1906. We deem it advisable to state his exact language as follows: "Mrs. Slingerland said to me, 'The key of the safe is between the carpet and the wheel,' and she says 'Get it for me.' I went and got the key and handed it to her. She took the old key in her right hand, 'Now,' she says, 'Russ, there is nothing to administrate on when I pass away,' or am gone, words to that effect. 'You open that safe and you will find money enough to pay my funeral expenses and my doctor's bills, and $75 for a little monument like that put at Henry's grave, and if there is any left, whatever is left send my sister Jane.' . . . I said to her, 'I will as long as you wish it; I will attend to that for you.' She then handed me the safe key which I have to the present time." From the foregoing testimony we think the court was justified in holding that a trust was created in said money for the purposes clearly set forth in said conversation. The "relation of personal confidence" with Mrs. Slingerland was voluntarily assumed by defendant, and he therefore became her trustee. (Civ. Code, sec. 2219.) There is no possible doubt that a contract could have been lawfully made between the parties for the desired purpose, and hence it could be the subject of a valid trust. (Civ. Code, sec. 2220.)

By her words and acts the trustor indicated with reasonable certainty her intention to create a trust and the subject, purpose and beneficiary of the trust, and it follows that a trust was created as to the trustor. (Civ. Code, sec. 2221.) There is no dispute that a trust as to personal property can be created by parol, but it is contended by appellant that a mere

agency was created which terminated on the death of the principal, that the defendant "is trying to carry out without probate the provisions of a simple attempted nuncupative will which was absolutely void," and that respondent's theory of the transaction cannot be maintained for the additional reason that there was no actual delivery of the money, as respondent testified that he did not take manual possession of it until after the death of his said sister.

There is no controversy, and can be none, as to the intention of Mrs. Slingerland that respondent should dispose of the funds as he has done, and therefore this vital question of what was intended—often embarrassing in kindred cases—is entirely eliminated. Indeed, the whole contention of appellant rests upon the assumption that the complete title to the money remained in Mrs. Slingerland until the time of her death. This, in our opinion, is born of a misconception of the trust transaction. The only reasonable construction of what was done and said is that she surrendered to respondent complete control and dominion over the property. If she had taken the money from the safe and delivered it to him with similar instructions, her act and declaration would have had no greater significance. She gave the safe to respondent, handed him the key, told him to dispose of the money after her death according to her directions, and he accepted the trust. It is difficult to understand how the transaction would have a different coloring if she had actually handed him the money or if he had taken it from the safe before her death. He certainly had the means of securing it, but there was no reason why he should not leave it in this safe place, until the occasion should arise for the disposition of it, which the evidence showed was near. Suppose she had said to defendant, "There is some money in the safe which I intrust to you; here is the key. After my death pay the doctor's bill, my funeral expenses, erect a seventy-five dollar monument over my grave and send the balance to our sister Jane," and he had agreed to do so, would anyone contend that a valid trust was not created or that it would make a particle of difference whether he actually took possession of the money prior to her death? The fact is that in case of such a trust, where the intention is clear that the trustee shall have present dominion over the property for the purposes of the trust, it is immaterial whether

he take immediate possession of the property or not. The distinction as to the element of delivery between the creation of a trust in relation to personal property and a gift of the same has probably not been given due weight by appellant and has led to a misconstruction of some of the decisions. The cases cited, we think, in view of the peculiar facts and circumstances involved, are generally harmonious.

In *Bedell v. Scoggins et al.* (Cal.), 40 Pac. 954, as stated in the syllabus: "Defendant gave deceased a note for money which he owed her, by which he promised to pay $400 for her funeral expenses or to return it to her on demand. During her last illness, deceased handed the note to defendant, saying, 'Here is something for you.' Held, that an express trust, to expend the money, after her death, for her funeral expenses, was created." The case is criticised by appellant but it has not been overruled, and as far as it declares the creation of a trust it simply gives effect to the intention of the parties and does not contravene any principle of law.

In *Hellman v. McWilliams*, 70 Cal. 449, [11 Pac. 659], it appears that "in September, 1879, there was due to Eli W. Hawkins from the Odd Fellows' Savings Bank the sum of $14,334.73, in evidence of which Hawkins held a passbook of said bank, issued to him by the latter, showing said amount to be due. The bank was in process of liquidation. On the eighth day of September, 1879, said Hawkins requested plaintiff to allow him, the said Hawkins, to assign to plaintiff the whole amount due from the bank, to be held by plaintiff in trust for the use and benefit of the minor children of Hawkins, reserving to himself, however, the right to draw such sums of said money from the trustee as he might deem proper for his own use. Plaintiff agreed to accept the trust and Hawkins verbally assigned to him all of said moneys to be held by him in trust as aforesaid. Hawkins delivered his passbook to plaintiff, who has since retained it." Prior to his death Hawkins drew out at divers times various sums, leaving a balance in the hands of plaintiff and also in the Odd Fellows' Bank, which the court below found to be trust funds. The judgment was affirmed by the supreme court and in the course of the discussion it is said: "The subject of the trust was personal property, and it was not necessary that the trans-

11 Cal. App.—46

fer should be in writing. Referring to the testimony, we find there was evidence tending clearly to show the intention on the part of Hawkins to create a trust in favor of his minor children, that the subject of such trust was clearly defined, and its purpose made manifest.''

In *Booth* v. *Oakland Bank of Savings,* 122 Cal. 19, [54 Pac. 370], it is held that ''a trust for the benefit of two sisters of the depositor of money in a savings bank, in the residue remaining at her death, is sufficiently proved by evidence showing that, in her lifetime, the deposit was changed by the bank, upon her order, so as to make it payable to the individual order of either of her sisters or of herself, for the purpose orally declared to the bank of arranging the deposit so that her sisters could draw it at her death, and have the immediate benefit of it without probate of her estate and by her addressing them a letter stating what she had done, and that upon her death they could draw the money and divide it equally between them, and directing them where they could obtain the bankbook.'' It is said by the court: ''The evidence falls far short of establishing a completed gift from Mrs. Bell to the plaintiffs; and although there are features in the case resembling a gift *causa mortis,* there are other features which distinguish it from such a gift; but these need not be discussed as there was evidence offered on behalf of the plaintiffs to show that Mrs. Bell proposed to create a trust for the benefit of the plaintiffs, and that the trust was accepted by the bank. It is well settled that a trust in personal property need not be in writing, and it is equally well settled that no set form of words are necessary to create a trust.''

In the late case of *Cahlan et al.* v. *Bank of Lasen County, ante,* p. 533, [105 Pac. 765], this court had occasion to reexamine the question of trusts in personal property and many of the decisions were reviewed and the doctrine reaffirmed that, ''Any words which indicate with sufficient certainty an intention or purpose to create a trust in personal property will be effective in so doing, without the use of the words 'trust' or 'trustee.' ''

The California cases cited by appellant are very easily distinguishable from the case at bar.

In *Flanagan* v. *Brown,* 70 Cal. 254, [11 Pac. 706], the question discussed was whether the admitted agency was coupled with an interest and therefore irrevocable. In *Daniel* v. *Smith,* 75 Cal. 548, [53 Pac. 931], *Hart* v. *Ketchum,* 121 Cal. 426, [53 Pac. 931] , *Knight* v. *Tripp,* 121 Cal. 674, [54 Pac. 267] , *Collins* v. *Maud,* 144 Cal. 289, [77 Pac. 945] , and *Beebe* v. *Coffin,* 153 Cal. 174, [94 Pac. 766], it was decided that delivery is necessary to constitute a complete gift.

In *Pullen* v. *Placer County Bank,* 138 Cal. 169, [94 Am. St. Rep. 19, 66 Pac. 740, 71 Pac. 83], it was held that a check delivered by the maker to the payee but not presented to the bank for payment until after the death of said maker neither amounted to a gift nor an assignment.

In *De Martini* v. *Alegretti,* 146 Cal. 214, [79 Pac. 871], the decision depended upon the construction of a written instrument reciting that a sum of money had been placed in the hands of two persons to keep, care for and invest the same for him in case of the death of the party executing it, and providing for the disposition thereof by them in certain sums to persons named or the survivors of them after his death. It was held that it vested no present interest in such persons but was testamentary in its character, and was void because not executed according to the statute of wills. It was said by the court: ''The instrument from beginning to end is, on its face, clearly and entirely testamentary in character.''

There can be no doubt that by the instrument in question there was an attempt made to effect a disposition of the property after death, and therefore the intention could not legally be carried into effect in opposition to the plain requirement of the statute in reference to the execution of such instruments.

But here we think a fair interpretation of the transaction leads to the conclusion that a trust was created with a present interest transferred to the trustee, with directions to carry out the terms of the trust after the death of the trustor. If the question were doubtful, it should be resolved in favor of respondent in view of his expenditure in good faith of the funds according to the declared will of deceased.

As far as the hogs are concerned, the court was justified in finding that they were sold by deceased to respondent, and

nothing of unfairness appears in respondent's conduct in relation thereto.

The judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 10, 1910.