[S. F. No. 7236.    Department Two.—June 7, 1917.]

ANDREW J. BELL, Administrator of the Estate of Catherine McGuire, Deceased, Appellant, v. LILLIE ROSE MOLONEY et al., Respondents.

GIFT INTER VIVOS—BANK DEPOSIT—TRUST—EVIDENCE.—In this action by the administrator of a deceased person to recover for the alleged conversion by a daughter of the deceased of a sum of money deposited in bank in their joint names, the evidence, while sufficient to establish the creation of a trust in the deposit in favor of the daughter, is also sufficient to support the finding of a valid gift *inter vivos* to the daughter.

PRACTICE—RIGHT OF JUDGE TO EXAMINE WITNESS.—It is the right and duty of a trial judge to take part in the examination of a witness whenever he believes that he may aid in bringing out the truth or in preventing a misunderstanding. In the present case, there was no departure from this rule in the questions asked a witness by the judge.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

F. J. Kierce, for Appellant.

Joseph Farry, for Respondents.

MELVIN, J.—Andrew J. Bell, as administrator of the estate of Catherine McGuire, deceased, brought suit for the alleged conversion by Lillie Rose Moloney of the sum of $2,088.46, which he alleged to have been the property of her

mother, Catherine McGuire. James J. Moloney was joined as a defendant because he is the husband of said Lillie Rose Moloney. It is alleged in the complaint that Mrs. McGuire died on or about June 21, 1912; that during her lifetime the money here in dispute was deposited with a certain banking establishment to the credit of Catherine McGuire or Lillie R. Moloney; and that the latter withdrew and converted the fund on or about the fourteenth day of March, 1912.

By the answer Mrs. Moloney admitted the withdrawal of the sum of $2,088.46 from the bank, but averred that she was at the time of such transaction the owner and entitled to the possession of said sum. Further answering defendants averred that Catherine McGuire during her lifetime created a trust of the sum deposited whereby it was to become the property of Mrs. Moloney at Mrs. McGuire's death; and it was also pleaded that during her lifetime Mrs. McGuire had made a valid gift of the money to Mrs. Moloney. The case was tried by the court without a jury and judgment was given and entered in favor of defendants. From this judgment and from an order denying his motion for a new trial the plaintiff appeals.

The court found that in August, 1897, Catherine McGuire and Lillie Rose Moloney deposited $160 in the bank to the credit of both of them, receiving a pass-book on which their names were written; that they then and there in writing directed the banking corporation to pay, and said corporation agreed to pay, any sum or sums of money then or thereafter deposited to the credit of their account to either one of the depositors who should demand and receipt for the same and produce the pass-book; and that on March 14, 1912, Mrs. Moloney withdrew $2,088.46, the balance then on deposit, and thereby closed the account. It was also found that at the time of the original deposit it was Catherine McGuire's intention to create, and she did create, a trust of said deposit in favor of her daughter, and that upon the death of said Catherine McGuire said Lillie Rose Moloney became the owner of the balance of the fund. The court further found that on or about March 14, 1912, Catherine McGuire gave and transferred to her daughter, Lillie Rose Moloney, all of the money then on deposit in the bank as evidenced by the bank-book.

There is abundant evidence to support these findings and the judgment based thereon. Respondent, Mrs. Moloney,

lived with her mother at No. 49 Farren Street, San Francisco. According to the uncontradicted testimony, on August 12, 1897, at the request of Mrs. McGuire the respondent, her daughter, accompanied her to one bank where the mother withdrew a sum of money and then they went to another bank where, at the mother's instance and request, the money was deposited to the credit of "Lillie R. Maloney" (an obvious clerical error) *"or* Catherine McGuire." A printed form furnished by the bank was filled and executed at that time. The material part of the writing was as follows:

"Pay all of any sum, or sums, of money that are now or may hereafter be deposited with you, by us, and entered in Pass Book No. 113,847, to whichever of us, the undersigned, shall demand and receipt for the same and produce said book.

"(Signed by)    LILLIE R. MALONEY.

Her

"CATHERINE   (X)   McGUIRE.

mark.

"Witness: F. E. WAGENER."

According to Mrs. Moloney's testimony, her mother told her that the deposit was made in that form so that upon Mrs. McGuire's death her daughter might have all the money then on deposit because, as the mother asserted, she had confidence that the daughter would use the money as she wished to have it applied. Mrs. Moloney said that upon one occasion her mother read a will to her, and when she asked why the money in that certain bank was not mentioned, the mother replied that there was no necessity for such mention as that had been fixed otherwise. Later, according to Mrs. Moloney's testimony, her mother told her to take the money from the bank and put it in a safe deposit vault so others should know nothing about it, as she (the mother) did not want anyone but respondent, Mrs. Moloney, to have it. Mrs. Rock, another daughter of Catherine McGuire, corroborated Mrs. Moloney in this part of her testimony, and also stated that their mother had frequently said that this money was so deposited that Mrs. Moloney could have it upon her death. Plaintiff and another witness testified to certain alleged conversations with Mrs. Moloney and the former to certain purported declarations of Mrs. McGuire shortly before her death which tended in some degree to contradict the evidence offered on behalf of defendants, but with this conflict we are not concerned, the

court below having reached its conclusions, as we have seen, upon ample evidence.

It is true, as respondent's counsel says, that the entire transaction may be upheld upon the theory of a trust supported by such authorities as *Booth* v. *Oakland Bank of Savings,* 122 Cal. 19, [54 Pac. 370]; *Drinkhouse* v. *German Sav. & Loan Soc.,* 17 Cal. App. 162, [118 Pac. 953]; *Sprague* v. *Walton,* 145 Cal. 228, [78 Pac. 645]; *Cahlan* v. *Bank of Lassen County,* 11 Cal. App. 533, 535, [105 Pac. 765]; *Thomas* v. *Lamb,* 11 Cal. App. 717, [106 Pac. 254]; *Carr* v. *Carr,* 15 Cal. App. 480, [115 Pac. 261]; *Culver* v. *Lompoc Valley Sav. Bank,* 22 Cal. App. 379, [134 Pac. 355].

But there was also abundant evidence to support the finding of a valid gift *inter vivos,* as Mrs. Moloney, corroborated by her sister, told of taking the pass-book and at her mother's direction reducing the money to possession, and of reporting that action to her mother. Thus actual dominion over the property, together with declarations of the donor's intent to give, were shown. These were ample circumstances to support a finding of a gift between living persons. (Civ. Code, secs. 1146, 1147; *Field* v. *Shorb,* 99 Cal. 661, [34 Pac. 504]; *Russell* v. *Langford,* 135 Cal. 356, [67 Pac. 331]; 20 Cyc. 1204.)

Counsel for appellant accuses the learned judge of the superior court, who presided at the trial, of being unfair toward plaintiff ''in his attempt to make the witness [Mrs. Rock] testify that she had no interest in the outcome of the litigation and no interest in the estate, which, up to the point of interruption, she conclusively showed she had.'' (We quote from the brief.) The criticism is without merit. The witness had said upon cross-examination: ''I have an interest in this money as an heir.'' After she had again made that declaration in the form of an affirmative answer to a leading question from the cross-examiner, the court took part in the inquiry and the following occurred:

''The Court: What interest have you in it?

''A. An interest in the estate.

''Q. This money is not in the estate. Do you realize that?

''A. I don't mean to say that the property—no.

''Q. What do you mean?

''A. I mean that it is this way; that my sister is always interested in these things and naturally I was an heir also.

CLXXV Cal.—24

"Q. In what way are you an heir?

"A. In the interest of my sister.

"Q. Do you realize that according to your sister's story this money was given to her absolutely and nobody else in the world?

"A. Sure.

"Q. What right have you in it, what interest have you in it?

"A. The interest of my sister.

"Q. I don't understand what you mean. Have you any right to any part of this money?

"A. No, not at all.

"Q. Could you claim it at any time?

"A. No.

"Q. That is what Mr. Kierce wants to know when he asks you what interest you have in it.

"A. I misunderstood Mr. Kierce."

The quotation demonstrates the propriety of the court's interruption. The witness had testified regarding her mother's declarations that the money in question was to go to Mrs. Moloney and that no mention was made of it in the will because it was disposed of otherwise. This testimony followed by the statement that the witness had an "interest" in the property "as an heir" called for explanation, and the court by a few questions developed the fact that Mrs. Rock was not using the word "interest" in its technical sense of "part ownership" or "right to participate in" the money, but with a very different meaning. Counsel criticises the court for saying, "The money is not in the estate, do you realize that?" By the use of these words, says counsel, the court "assumed that it had already concluded the very issue in the case against the appellant." Commenting further upon this matter in his brief counsel uses the following language: "This was a very unfair interruption of the examination of the witness, for the very question involved in this proceeding *was whether the money belonged to the estate of the deceased, Catherine Mc-Guire, or belonged to the sister of the witness* then on the witness-stand. The court had no right whatever, either to interrupt the cross-examination of an unfair witness or to assume in advance that the *very money which was the subject of his own inquiry* did not belong to the estate at all." There is nothing in the record to justify this criticism. It is the right and the bounden duty of a judge of a trial court to take

part in the examination of a witness whenever he believes that he may aid in bringing out the truth or in preventing a misunderstanding. By remarking that the money was not in the estate the learned judge was not declaring a prejudgment of the principal issue in the case, but was uttering a fact about which there was no dispute among the litigants. That the money had been taken by Mrs. Moloney and used as her own was charged and not denied. That it was out of the estate was the very reason for the administrator's suit. The purpose of the action, so far as he was concerned, was to force her to return an equivalent sum to the estate. Until and unless it should be restored to the estate the witness could have no interest in the money as an heir, and the judge was very properly endeavoring to discover why she declared herself so interested in a fund which, according to her testimony, her mother had disposed of some months before the latter's death.

We have carefully examined the other assignments of error and find them without merit.

The judgment and order are affirmed.

Henshaw, J., and Lorigan, J., concurred.