[Civ. No. 4666. First Appellate District, Division One.—August 29, 1924.]

FREDERICA LOGAN, as Administratrix, etc., Appellant, v. JOHN H. RYAN, Sr., et al., Respondents.

[1] TRUSTS—VOLUNTARY TRANSFERS—ORAL AGREEMENT OF GRANTEE—INTENT—CONSTRUCTIVE TRUST—EVIDENCE—FINDINGS.—In this action to declare void certain transfers of real and personal property and to recover said property as a part of the estate of plaintiff's intestate, there was ample evidence to support the findings of the court that the entire transaction involving the transfer of said property from the deceased to one of the defendants was free from any element of undue influence or agency, that, by the execution and delivery of the deeds to the real property to said defendant, the deceased intended to divest himself absolutely of all title thereto and he thereby parted with all dominion over the same and reserved no right whatever to recall or alter said deeds, that as to certain of said real property, it was the intent of the deceased that said defendant should take possession of and hold the same absolutely as his own property free and clear of all trusts, conditions, and restrictions, that the deeds to the remainder of the real property were made upon the under-

standing and agreement that upon the death of the deceased the said defendant would convey the same to certain beneficiaries in accordance with the oral understanding entered into at the time said real property was conveyed to him, and that as to the personal property the transfer from the deceased to said defendant created a valid trust relationship

[2] ID.—VOID ORAL TRUST IN LAND—ENFORCEMENT BY BENEFICIARIES. Where one conveys land to another, by a deed absolute on its face, in reliance upon an oral agreement between them that the grantee will hold the same in trust for the grantor during his lifetime, and upon his death the grantee will convey said lands to others, and such deed is made in the belief that the grantee will faithfully execute the trust, as he has agreed, and for no other consideration, and would not have been made except for such promise, a constructive trust arises in favor of the beneficiaries which is enforceable against the grantee after the death of the grantor, notwithstanding such transaction is void as an express trust.

[3] ID. — INSUFFICIENT PROOF OF TRUST — GIFT — CONVEYANCES BY DONEE.—In such case, if the evidence educed is not sufficient to establish the attempted trust, then the deed, which is absolute on its face in favor of the grantee, must be construed as a gift, and, being a gift, the grantee has the right to dispose of the property thus transferred to him in the manner agreed upon between him and the grantor; and the administratrix of the estate of said grantor is not entitled to have such transfers declared void or to recover the property as a part of the estate of said grantor.

[4] ID.—PERSONAL PROPERTY—VOLUNTARY TRUST—GIFT CAUSA MORTIS—INTENT—EVIDENCE.—In this action to declare void certain transfers of personal property and to recover said property as a part of the estate of plaintiff's intestate, the evidence showing that, as to the money, the deceased placed the same in a bank account jointly with one of the defendants, and they orally agreed as to what disposition was to be made of the funds remaining upon the death of the deceased, and that, as to certain jewelry, the same was placed in individual envelopes marked to show the beneficiaries thereof upon the death of the deceased, and such envelopes were delivered to said defendant and by him placed in a safe-deposit box held jointly by him and the deceased, clearly demonstrated that it was the intention of the deceased

2. Sufficiency of evidence to establish constructive or resulting trust, note, Ann. Cas. 1916D, 1194. See, also, 26 R. C. L. 1251.

3. Whether deposit in joint names is gift to codepositor, notes, 12 L. R. A. (N. S.) 355; L. R. A. 1917C, 550. See, also, 4 Cal. Jur. 200.

to create a trust concerning such money and jewelry, and not to make a gift *causa mortis;* and a voluntary trust was thereby created.

(1) 18 **C. J.**, p. 443, sec. 550, p. 445, sec. 552; 39 **Cyc.**, p. 85. (2) 39 **Cyc.**, p. 178. (3) 23 **C. J.**, p. 1152, sec. 365. (4) 39 **Cyc.**, p. 76.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge. Affirmed.

The facts are stated in the opinion of the court.

Charles F. Hanlon for Appellant.

Sullivan & Sullivan and Theo. J. Roche for Respondents.

KNIGHT, J.—Action by plaintiff as administratrix of the estate of Michael Ryan, deceased, to declare void certain transfers of real and personal property and to recover said property as a part of the estate of said deceased. Judgment was for the defendants and the plaintiff appeals.

The deceased, Michael Ryan, at the time these transfers were made, was of the age of seventy-seven years and was residing with his stepdaughter, the appellant. He had been suffering for some time from a lingering illness from which on January 24, 1916, he died. The nearest relatives, so far as the record discloses, were his brother John and certain nephews and nieces. Prior to September 2, 1915, the deceased was the owner of the property sought to be recovered in this action. It consisted of several pieces of real property, part of which was situate in San Francisco and the balance in Oakland, money on deposit in a bank in San Francisco and several pieces of jewelry which he kept in a safe-deposit box in said bank. During the month of August, 1915, plaintiff and the defendant John H. Ryan, Sr., were discussing the fact that Michael had apparently made no will and they thought that the matter should be brought to his attention, but neither of them cared to mention it to him and consequently they requested an old friend and comrade of Michael's named Maxwell to do so, which he did. The result was that Michael sent for his brother John and di-

rected the latter to call in a certain attorney who had previously acted for Michael. A few days later when said attorney called, Michael, in the absence of John, directed said attorney to prepare eight deeds without inserting the names of the grantees in the deeds because he had not then decided how the particular pieces of property should be divided. Two days later Michael changed his mind about conveying the property direct to the beneficiaries and again sending for his brother John told him that he had concluded to convey all of said property by two deeds to him, John, one deed covering the property in Oakland and the other the property in San Francisco. John thereupon, at Michael's request, phoned said attorney to prepare the two deeds accordingly. On September 2, 1915, Michael and his brother John met said attorney by appointment at the bank. The attorney produced the two forms of deed from Michael to John and also the eight forms of deed which Michael first intended to execute, said attorney having been requested to bring the same with him. After the two forms of deed from Michael to John were read to Michael he signed and acknowledged the same before a notary public and delivered them to John. Michael then said: "Now, John, I have given you everything that I have got and you have got to take care of me." Michael then stated that he had money in the bank, that the book was upstairs and that he was going to change the account so it would stand in the names of John and himself. John then having in his possession the two deeds, accompanied Michael and Michael's attorney to the main floor of the bank where the account of Michael Ryan was closed and a joint account opened in the names of Michael Ryan or John H. Ryan, or the survivor of them. The money was then transferred to the joint account. Immediately after the new account was opened Michael declared to John that the property and the money was John's; that he, Michael, did not have anything but that he depended upon John to take care of him in his sickness. They then returned to the safe-deposit department of the bank and John stated that he did not want the property for himself with the exception of the lot on Telegraph Hill, and he asked Michael to designate the ones he would like to have receive the remaining real property. Michael thereupon named each person and

as he did so the attorney substituted the name of John for Michael as the grantor in the unsigned deeds and wrote in the name of the grantee in each of the eight deeds. John Ryan afterward signed the deeds and placed them in an envelope on which he wrote his name and placed the envelope in the safe-deposit box, which then stood in the name of Michael and himself. The envelope containing the deeds remained there until after the death of Michael. The two deeds conveying the property to John were placed on record the next day and thereafter John took charge of the property, collected the rents, and turned said rents over to Michael up to the date of Michael's death.

During this same meeting at the bank after the matter of the real estate had been disposed of and the new bank account opened, John asked Michael what he should do with the money and finally a memorandum was drafted by said attorney and signed by John, which read in part as follows: "To Michael Ryan, San Francisco, September 2nd, 1915. I hereby agree to pay the following sums—to the following persons the following sums, after the expenses of the funeral of my brother Michael Ryan: To Michael J. Manning, 1/3rd," and then followed the names of eight other persons who were selected by Michael as the ones to receive the balance of the money, the proportion to each person being specified. This memorandum was signed by "John H. Ryan" and witnessed by said attorney. After said joint account was opened John retained possession of the bank-book' and there was no money drawn from said joint account by either John or Michael until after death of Michael.

The jewelry was disposed of at this same meeting in the bank. It was taken out of the safe-deposit box and as Michael took each article of jewelry he handed it to said attorney and stated the name of the person he wanted to have it. Said attorney then placed the same in an envelope and wrote the name of such person thereon. When all of the jewelry was thus distributed, Michael took all of said envelopes and handed them to his brother John with instructions to deliver the same to the persons named on the envelopes immediately upon his death. All of said envelopes were then placed by John in the safe-deposit box, which,

as before stated, stood in the joint names of himself and Michael.

Upon the death of Michael the real property was conveyed and the money and jewelry were distributed by John in accordance with the declared wishes of his brother Michael, except that plaintiff declined to accept her share of the money, amounting to $250.

The complaint in the action contains three causes of action. The first count relates to the transfer of the real and the personal property, while the second and third counts pertain respectively to the real property and the personal property separately. All three counts are based upon the same grounds of attack.

The complaint alleges and it is contended upon this appeal in substance and effect that the transfer of the real property was obtained by John H. Ryan, Sr., from his brother Michael at a time when confidential relations existed between them, thereby placing the burden upon the defendant John H. Ryan, Sr., to prove that the two deeds by virtue of which the transfer of said real property was made to him were obtained by fair means, which burden appellant claims the said John H. Ryan, Sr., failed to assume; that said deeds were void because they were gifts *causa mortis* imperfectly made; that they were not delivered; and that they were not intended to convey title until after death and hence were testamentary in character and consequently void; that the transaction involving the transfer of the personal property constituted a mere agency which was terminated by the death of Michael.

[1] The court found that the entire transaction involving the transfer of said real and personal property was free from any element of undue influence or agency. In regard to the real property the court found that by the execution and delivery of the two deeds mentioned the said Michael Ryan intended to divest himself absolutely of all title to said real property and that he thereby parted with all dominion over the same and reserved no right whatever to recall or alter either of said deeds; that it was the intent of the said Michael Ryan that the said John H. Ryan, Sr., should take possession of and hold absolutely as his own property free and clear of all trusts, conditions, and restrictions the lot re-

ferred to as the Telegraph Hill property; that the deeds to
the other real property were made upon the understanding
and agreement that upon the death of the said Michael Ryan
the said John H. Ryan, Sr., would convey the same to the
beneficiaries in accordance with the understanding herein-
above mentioned. In regard to the personal property the
court found that the transfer created a valid trust relation-
ship.

A review of the record indicates that there is ample evi-
dence to support these findings. [2] Appellant, however,
contends that not being in writing a voluntary trust is void
and that the law and decisions pertaining to involuntary or
constructive trusts which arise by operation of law cannot be
invoked. This question was considered in the case of *Lauri-
cella* v. *Lauricella,* 161 Cal. 61 [118 Pac. 430]. That case
holds that where one conveys land to another, by a deed abso-
lute on its face, in reliance upon an oral agreement between
them that the grantee would hold the same in trust for the
grantor during his lifetime, and that upon his death the
grantee would convey said lands to others, such deed having
been made in the belief that the grantee would faithfully exe-
cute the trust, as he agreed, and for no other consideration,
and would not have been made except for such promise, a
constructive trust arises in favor of the beneficiaries which is
enforceable against the grantee after the death of the grantor.
In the instant case two absolute deeds were executed by
Michael Ryan to John H. Ryan, Sr., but there was an under-
standing that upon the death of Michael certain of the real
property was to be deeded to certain beneficiaries. Such being
the case, it is clear, as stated in *Lauricella* v. *Lauricella, supra,*
that the beneficiary could enforce the trust for the reason that
if the transfer to John H. Ryan, Sr., was obtained through
fraud, accident, mistake, undue influence, or the violation of
a trust or other wrongful act, he was, unless he had some
other or better right thereto "an involuntary trustee of the
thing gained, for the benefit of the person who would other-
wise have had it." The court goes on to say that "if the
confidence by which the thing was gained had not been be-
trayed, the person to whom the promise ran, the one who
was to receive it ultimately, would be the 'person who would
otherwise have had it.' . . . No conditions other than those

stated in section 2224 are necessary. If those conditions exist, the involuntary trust arises, although the transaction was entirely oral and consequently void as an express trust under sections 852, 1091 and 1624, and although the means of gaining the thing was the making of an oral or written promise to convey to some other person, or reconvey to the donor.'' True, ''it is the violation of the parol promise which constitutes the fraud upon which the trust arises'' (*Cooney* v. *Glynn*, 157 Cal. 587 [108 Pac. 506]), but it should be quite evident that the grantee either took an absolute title to himself or for the benefit of another person and if he did not make the conveyance as per his parol promise a constructive trust arose and the beneficiary could enforce the agreement by virtue of the involuntary trust provisions contained in section 2224 of the Civil Code. The only evidence to show that it was not intended as an absolute gift is the parol promise to convey the land to certain beneficiaries, which, in case said promise was not performed, would ripen into an involuntary trust. [3] On the other hand, if we do not consider the evidence educed in regard to the attempted trust we have a deed absolute on its face from Michael to John, which must be construed as a gift. A gift vests the donee with the absolute property in the thing given, and it is no longer subject to the control of the donor. (*Pullen* v. *Placer Co. Bank*, 138 Cal. 170 [94 Am. St. Rep. 19, 66 Pac. 740, 71 Pac. 83].) This being so, it is obvious that John H. Ryan, Sr., had the right to dispose of the property in the manner agreed upon between himself and the grantor, Michael Ryan.

[4] The next question arising is as to the bank account and the jewelry to which reference has heretofore been made. The personal bank account was closed, a joint account opened, and certain jewelry was by Michael Ryan's request deposited in envelopes, handed to John H. Ryan, Sr., and by him returned to the safe-deposit box, which belonged to them jointly.

The contention is made by appellant that the existence of the joint account did not mean that they were in reality joint owners, but that John was bound ''as Michael's agent, to allow the money to stay in the bank till Michael died, and then . . . notwithstanding the existence of an apparent

survivorship bank account, he as Michael's agent was to go and take the money out of the bank and pass it around to the heirs according to the written memorandum.'' This contention would be true if the intent of the donor was to make a gift *causa mortis,* for if such was the case an agency would be created which would terminate at the death of the donor (*Hart* v. *Ketchum,* 121 Cal. 426 [53 Pac. 931]), but in order to constitute it such a gift there must be an intention to confer a present right to the money in the beneficiaries. This was not the case here; the intention, as found by the trial court, was that upon the death of Michael Ryan the money would be distributed to specified persons after payment of debts and funeral expenses and the jewelry was to be given to the persons whose names appeared on the envelopes containing said jewelry. We are of the opinion that the transaction must be given the effect of a trust. ''Any words which indicate with sufficient certainty *an intention or purpose* to create a trust will be effective in so doing, without the use of the words trust or trustee.'' (*Cahlin* v. *Bank of Lassen County,* 11 Cal. App. 534 [105 Pac. 765].) (Italics ours.) The case of *Thomas* v. *Lamb,* 11 Cal. App. 717 [106 Pac. 254], is, we believe, determinative of the question of the trust with regard both to the money and jewelry. The same reasoning applies with peculiar force. ''The only reasonable construction of what was said and done is that'' Michael ''surrendered to'' John ''complete control and dominion over the property. . . . He certainly had the means of securing it, but there was no reason why he should not leave it in this safe place, until the occasion should arise for the disposition of it.'' The court further said that ''in case of such a trust, where the intention is clear that the trustee shall have present dominion over the property for the purposes of the trust, it is immaterial whether he take immediate possession of the property or not. The distinction *as to the element of delivery between the creation of a trust in relation to personal property and a gift of the same has probably not been given due weight by appellant and has led to a misconstruction of some of the decisions.''* (Italics ours.) It is our opinion that the record demonstrates clearly an intention on the part of Michael Ryan to create a trust concerning the personal property and the subject, purpose, and

beneficiary thereof. A voluntary trust was thereby created. (Civ. Code, sec. 2221; *Drinkhouse* v. *German Sav. & Loan Soc.,* 17 Cal. App. 169 [118 Pac. 953]; *Hellman* v. *McWilliams,* 70 Cal. 449 [11 Pac. 659].)

The judgment is affirmed.

Tyler, P. J., and St. Sure, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 27, 1924.

All the Justices concurred.